No. 24,066.

*In re* THE DISBARMENT OF GEORGE W. STATON.

SYLLABUS BY THE COURT.

1. PROCEEDINGS IN DISBARMENT OF ATTORNEY—*Certain Accusation Not Sustained.* In a disbarment proceeding one charge was that the attorney attempted to procure a continuance of a cause and the issuance of an attachment for an absent witness, representing to the district court that the return showed no demand for witness fees, although he had been informed by the officers who served the subpœna that the witness had demanded his fees and that they had not been paid. The commissioner made a finding that the accused acted inadvertently under a misapprehension of the real facts and intended no wrong, and as a conclusion of law dismissed the charge. The commissioner's findings of fact and conclusions of law in respect to this charge are approved, and the charge is dismissed.

2. SAME—*Attempted Bribery of Officer—Charge Sustained.* On the charge of attempted bribery of certain officers, in that the attorney placed a twenty-dollar bill in a bottle and offered and attempted to exchange it for a bottle containing intoxicating liquor held by the officers to be used as evidence in a liquor case, *held,* that the charge is sustained by the testimony; and the report of the commissioner recommending that the charge be dismissed is set aside, and judgment is rendered suspending the accused for the period of one year.

3. SAME—*No Justification for Attempt to Bribe an Officer Shown.* In seeking to avoid the charge of bribery of an officer, the attorney admitted placing the twenty-dollar bill in a bottle and giving it to one of two officers who had arrested a person charged with the unlawful sale of intoxicating liquor, and attempted to justify his conduct by stating that he gave the money to them as a reward and to show his appreciation for their sending to him as a client the person they had arrested. *Held,* he thereby set up as a defense matters which, if true, are sufficient themselves to justify disbarment, being directly contrary to the provisions of rule 28 of the code of professional ethics adopted by the American Bar Association and the Bar Association of Kansas, and approved by this court (*Judy & Gilbert v. Railway Co.,* 111 Kan. 46), which rule reads, in part, as follows:

"It is disreputable to hunt up defects in title or other causes of action and inform thereof in order to be employed to bring suit, or to breed litigation by seeking out those with claims for personal injuries or those having any other grounds of action in order to secure them as clients, or to employ agents or runners for like purposes, or to pay or reward, directly or indirectly, those who bring or influence the bringing of such cases to his office, or to remunerate policemen, court or prison officials, physicians, hospital attachés or others who may succeed, under the guise of ·giving disinterested friendly advice, in influencing the criminal, the sick and the injured, the ignorant or others, to seek his professional services. A duty to the public and to the profession devolves upon every member of the bar, having knowledge of such practices upon the part of any practitioner; immediately to inform thereof, to the end that the offender may be disbarred."

Original proceeding in disbarment. Opinion filed November 4, 1922. Suspension for one year.

*Richard J. Hopkins,* attorney-general, and *James A. Troutman,* of Topeka, for the accusers.

*A. H. Skidmore,* and *Don H. Elleman,* both of Columbus, for the accused.

The opinion of the court was delivered by

PORTER, J.: Disbarment proceedings were brought against George W. Staton, a member of the bar, whose residence is Baxter Springs. The accusation charged that on July 11, 1921, he willfully and maliciously offered and attempted to exchange a certain bottle, in which he had placed a smaller bottle containing a twenty-dollar bill, for a bottle then held by Charles Upson, city marshal, A. R. Weaver,

policeman, and Turner Hendren, a special officer of the city of Baxter Springs, representing to them that the bottle he had contained more "kick" than the bottle they had, which they claimed held intoxicating liquor and which they were holding in their custody as evidence in the trial of the case of *The State v. W. L. Blair,* wherein Blair was charged with having intoxicating liquor in his possession in violation of law, the case then pending in justice court; that in pursuance of his unlawful attempt the accused succeeded in placing the bottle in the hands of Charles Upson, city marshal, but was prevented from obtaining possession of the bottle containing liquor by the officers, who returned the twenty-dollar bill to him.

Another accusation charged him with deceiving the district court willfully and maliciously and in violation of his oath of office and his duties as an attorney at law, in knowingly misrepresenting and attempting to mislead the court as follows:

In April, 1921, in a case pending in that court wherein he was an attorney for one party he caused to be issued a subpœna for one Art Nichols, a witness who demanded payment of his witness fees and mileage. The officer who served the subpœna immediately communicated this fact to the accused, but when the case was called for trial the accused asked for the issuance of an attachment for the witness and for a continuance of the case on account of the absence of the witness. The court inquired about the matter, and the accused presented the return, which failed to show a demand for witness fees, and pretended that his only knowledge on the subject was the officer's return. The court, hearing rumors that demand had been made for witness fees, investigated the matter and learned the truth, and when the court confronted the accused with the facts he made no denial of his knowledge concerning them.

The complaint against the accused was sworn to by E. B. Morgan of Galena, a member of the bar.

The substance of Upson's testimony is:

With the assistance of Hendren he arrested Blair on a liquor charge and seized some liquor. Blair inquired about attorneys and the witness recommended Geo. W. Staton. Hendren took Blair to Staton's office. Upson got word that Staton wanted to see him and went to the office. Staton said: "I got some stuff here that I will trade you for that stuff down there." Upson replied: "There is nothing doing George, what are you talking about?" Staton said: "This stuff is a whole lot better than what you got." Staton "had a

square bottle with a pill bottle inside. . . . and something green inside of that. I said: 'Let me smell of it.' He grabbed it away and would not let me take the cork out of it. I supposed it was some strong stuff, and we was always jollying around. He laid it down and said, 'You will not trade,' and I said, 'No, I know what I got.'" Later in the evening Upson, Hendren and several others were standing in front of the drug store talking with the accused, who had a bottle in his hands. Upson grabbed it, and the accused said: "There is a good drink in there for you and Turner anyway." "I said, 'Well we will go down and take a shot.' We went down to the station and broke the bottle and there was a twenty-dollar bill in it. I put it away in the locker." About ten o'clock that night the accused called him over the telephone. "He and Turner had had some words on the street and he wanted to come down and see what I thought about it. . . . He thought Turner was accusing him of bribing, I did not feel that way about it at that time myself. . . . He wanted me to try to get Turner to think different. Turner would keep saying that it was a case of bribery." The following morning witness gave the bottle back to Staton and said: "Here George the rest of them don't seem satisfied with this I will give it back." The accused said: "If you feel that way about it I will accept it." "I said, 'That is the way the others feel, and if they do, I do, too.'

"Q. What do you mean by that? A. That they felt we had no right to it.

.   .   .   .   .   .   .   .   .   .   .   .

"Q. And did you give it back for that reason? A. Yes, sir."

Policeman Hendren testified in substance as follows:

When Blair was arrested he wanted to get an attorney and suggested that he be taken to Galena to see Mr. Morgan. The witness told him that Staton was a pretty good attorney and would handle the case cheaper than Morgan because he was right there. At Blair's request he took him to Staton's office and left the two together. Shortly after, the three went in Staton's car to Blair's residence, where the Blairs put up a victrola and two diamonds as security for Staton's fee. In the car Staton said: "You don't know that is whisky in that bottle?" "I said, 'Don't I.' He said, 'No, you don't; it may be water. . . . I got a bottle in my office that has more kick in it than that and I would trade it to you and you would have a real case.'" The witness thought at first he was joking. When they reached Staton's office he said again, "I have got

a bottle upstairs, I am sure it is in my office right now, with more kick in it than this." Hendren became angry and said, "George you know, if you mean anything by that, that I don't do that kind of business." Later in the evening he was on the street where Upson and the accused were talking. Staton had the bottle in his hands, "a small-like bottle, and they were talking, first about one thing and another. . . . After that I noticed Upson put his hand out, and George (Staton) let loose of the bottle and said, 'all right I want you and Turner to have that. . . . I want you to split that, it may turn yellow but it is good stuff.' " At the police station, in the presence of Upson, he opened the bottle, "pulled out the cork and there was a twenty-dollar bill in the smaller bottle." The bottle was broken. That night he met Staton and asked him "what right he had to think he could buy me for ten dollars. He said he didn't know he was trying to buy me. I said it looked that way to me."

The accused testified that he was thirty-three years of age, born in Cherokee county; had attended the State University for five years, a year in the State University of California and one year in the University of Nebraska. He was admitted to practice in 1917.

Respecting the first charge, he testified that when Hendren met him on the street and said he had arrested a man and was going to bring him to his office, he was then on his way home and had purchased, with other groceries, a bottle of grape juice. He went back to his office to wait until Blair came with Hendren. In his car with Hendren and Blair he asked Hendren if he thought he had a case against Blair. Hendren said he had about a peck of mash and a bottle of whisky. He replied: "As far as your mash is concerned I would not give two whoops for it, . . . and as far as the whisky is concerned, I have a bottle in my office with twice as much kick in it as the bottle you took off this man here." He says he was referring to the bottle of grape juice Hendren had seen him carrying to the office. He asked Hendren to send Upson to his office as he wanted to talk to him about some other matters. While waiting for Upson, he got to thinking of the various favors Upson had done for him "serving papers for small fees; arising from bed at defendant's request to catch parties before they left town; getting quick service on others that would have left town; and making thorough search for judgment debtor's property that would not have been found otherwise." He thought also of the fact that Blair had told him

*In re* Staton.

that Hendren had spoken well of him as an attorney and had sent Blair to him; and he "thought that it would be an appropriate gift now, the case I had just received being a liquor case. I decided to fix up a hootch bottle, so I went to the drug store and obtained a small bottle and a small vial, not stating to him (the druggist) what I had planned for fear he would tell it to the officers before I had time to express my appreciation. When the constable came to the office, I was just finishing the preparation of the bottle. . . . I stated to Upson that I was preparing a gift for him, and he seemed dubious, and he thought I was springing a joke on him, and laid it down again as he went out so . . . I started out to find him." On the street that evening he talked with Hendren about the good case that had been sent to him and he expressed his appreciation. He said: "I take it that both of you sent Blair to me, and I never asked that Charlie ever send any business to me. Charlie said that he had sent this to me for the sole reason that he liked me and the way I practiced law; and I then stated, 'I want you men to know that I appreciate all that you have done for me.' Therefore in the bright light of this drug store with several men still hanging around . . . I drew the fatal bottle from my pocket. I held the small bottle up in a joking attitude. . . . Charlie grabbed me himself, and took the bottle away from me in his own hands, and in a boisterous, laughing voice said, 'another booze case, here is a hootch bottle, I guess we had better take you with us;' so I said, 'I better not fight you; you just take that, Charlie, and have a snort of it, and give Hendren a shot of it, then remember I am not such a cheap skate after all.' " He denied that there was anything said about evidence possessed by the officers. He admitted that in ten minutes Upson came back and asked him what he meant by the bottle, and he repeated his statement that it was a gift in remembrance of the many past favors and said that if he (Upson) didn't think he could accept it, he could return it then. When Upson told him what Hendren said about the attempted bribe he said: "I never gave you the bottle, you took it away from me." Upson replied: "That is right." And Staton said: "How could I bribe you if you took the bottle away from me?" Upson said that he didn't feel that Staton was trying to bribe anyone, but that Hendren was insisting that that was what he intended, and Upson wanted to let Staton know how Hendren felt. When Hendren afterwards accused him of attempted bribery he said; "I never gave this bottle to you, Hendren, and you are mak-

ing charges to me that don't sound good." The next day he saw Upson and said to him, "Charlie after the incident last night I am of the opinion that Hendren doesn't want to accept any favors from me, and after he has bawled me out on the street like he had, I certainly don't feel or intend for him to reap any of the benefits of what I intended for you."

On the charge of attempted bribery the commissioner recommends that the accused be reprimanded for his conduct in presenting money to Charles Upson and Turner Hendren and that the proceedings be dismissed. The accused filed a motion to confirm the findings of fact and conclusions of law of the commissioner and for a dismissal of the accusation. The board of law examiners filed a motion to set aside the commissioner's findings of fact and conclusions of law and for judgment disbarring the accused on the record.

At the July session the court made an order setting aside the findings of fact and conclusions of law and suspended George W. Staton from practicing law for a period of one year.

In his answer and testimony the accused claims that the charges against him are the result solely of personal animosity toward him and professional jealousy on the part of the attorney who filed the accusation. He claims that on one occasion while in the office of Mr. Morgan the latter cursed him and threatened him with personal violence; that at another time in a telephone conversation the same thing occurred; that in the court room on several occasions when they were opposing counsel the accused had been reprimanded by the court for the language used toward him. His testimony is that the two charges in the accusations passed upon by the commissioner, as well as another charge (upon which no testimony was received), grew out of litigation in which he and his accuser were on opposite sides, and that, following the bottle incident, Blair discharged him as attorney in the liquor case, without settling with him for his fees, and employed Mr. Morgan.

The case is one of grave importance to the legal profession, to the courts and the public. The court will not concern itself nor take into consideration evidence of the motives that may have induced the filing of the disbarment proceedings, except as such evidence may tend to throw light upon the truth of the accusations. The attorney who filed the charges was a witness before the commissioner, but testified only with respect to the second accusation, stating what he says is his recollection of what occurred in court when the at-

*In re* Staton.

tachment was asked for the absent witness. His testimony does not differ materially from that of Judge Boss, except that the latter was unable to recall any affirmative statement by the accused to the effect that the witness had not demanded his fees.

We shall take up first the charge that the accused attempted to procure the continuance of a cause and the issuance of an attachment for an absent witness, knowing the witness fees had been demanded and not paid. On this charge we approve the commissioner's findings of fact and conclusions of law.

The accused admitted that he was careless in that matter and gave a plausible explanation of his failure to be impressed with what was said to him by the officer who served the subpœna. The court at the time apparently felt obliged to accept the explanation given by the accused. There was, perhaps, more than mere carelessness, indifference, or a failure to appreciate the responsibilities that always rest in such circumstances upon an attorney, and which require him to be perfectly candid and frank with the court, and to know the facts whereof he speaks. The commissioner adopted, and we adopt, the recommendation of the learned judge of the district court, when testifying before the commissioner—that in view of the youth and inexperience of the accused, his explanation be accepted.

Upon the more serious charge of attempted bribery of an officer, the commissioner, while unwilling to absolve the accused from blame, was apparently impressed with his youth and inexperience and his ignorance of what is required of an attorney, his natural disposition as shown by the testimony to be "smart," to act foolish, and to seek notoriety by "stunts" involving practical joking; and the commissioner finds that the accused did not, as charged, attempt directly or indirectly to bribe the officers or either of them, but that he did give and present to Charles Upson and Turner Hendren, $20, "in the form of a twenty-dollar bill, for services rendered in serving papers in cases in which said George W. Staton was interested, and for sending him legal business; that the acts and conduct of said George W. Staton in relation to said charge were eccentric, out of the ordinary, and probably in violation of rule 28 of the code of ethics, but his acts and conduct in that regard did not involve moral turpitude and no evil or wrong was intended thereby." The commissioner recommends that the charge of attempted bribery be dismissed, but that George W. Staton

*In re* Staton.

be reprimanded for his acts and conduct in presenting the money to the officers.

We are compelled to take a different view of the matter, especially of the testimony of the officers themselves as well as the admissions of the accused. Officer Hendren, recalling the efforts made by Staton to secure an exchange of his bottle for the bottle containing the intoxicating liquor taken from Blair, understood the purpose of the gift from the first, notwithstanding the camouflage of hiding the twenty-dollar bill in the bottle Staton had fixed up with so much care. Upson's evidence shows that he was doubtful about the propriety of the gift and had to seek reassurance from Staton to the effect that the purpose was only to show that Staton was not a "cheap skate," and appreciated the favors shown him by sending him legal business.

But aside from this, the accused, in seeking to avoid the charge of bribery of an officer, sets up as a defense facts which of themselves are sufficient to justify his disbarment. Apparently he overlooked, if he ever read, rule 28 of the code of professional ethics adopted by the American Bar Association and the bar association of this state, approved by this court (*Judy & Gilbert v. Railway Co.,* 111 Kan. 46) and published on the first page of the monthly bar docket for the past two years and which has appeared in the front pages of volumes 107, 108 and 110 of the Kansas Reports.

We quote from rule 28 as follows:

"It is disreputable to hunt up defects in title or other causes of action and inform thereof in order to be employed to bring suit, or to breed litigation by seeking out those with claims for personal injuries or those having any other grounds of action in order to secure them as clients, or *to employ agents or runners for like purposes, or to pay or reward, directly or indirectly, those who bring or influence the bringing of such cases to his office* or to remunerate policemen, court or prison officials, physicians, hospital attachés, or others who may succeed, under the guise of giving disinterested friendly advice, in influencing the criminal, the sick and the injured, the ignorant or others, to seek his professional services. A duty to the public and to the profession devolves upon every member of the bar, having knowledge of such practices upon the part of any practitioner, immediately to inform thereof, to the end that the offender may be disbarred."

We have not been impressed by the voluminous answer filed by the accused in an attempt to explain his action in connection with this charge. It is largely made up of irrelevant matter and recriminations of his accuser and the witnesses; some of them his former

The State v. Dorchy.

friends, including the officers who gave testimony against him. His answer to this charge is neither ingenuous nor frank. His answer and admissions on the witness stand amount to a confession that he was attempting to give the $20 to Upson, with instructions to divide it with Hendren for their services in sending Blair to him as a client in the liquor case.

The ground upon which the court ordered the accused suspended for one year was not that his conduct is condemned by the code of ethics but because such conduct upon the part of an attorney is morally reprehensible.

The order therefore is that he be suspended from practice as an attorney for one year.