Fred W. Rausch, Jr. Attorney for Unified School District No. 343 Suite 201 220 West 33rd Street Topeka, Kansas 66611
Dear Mr. Rausch:
As attorney for unified school district no. 343 (U.S.D. #343), you request our opinion regarding whether certain provisions of a proposed agreement to be entered into by U.S.D. #343 and B. C. Christopher are legal. Specifically, you ask the following:
 1. Whether the proposal submitted by B. C. Christopher would constitute the solicitation of law business by a corporation not licensed to practice law;
 2. Whether the proposal would infringe upon the authority of the school district to appoint legal counsel;
 3. Whether the proposal results in a violation of the attorney-client relationship between the school district and the present legal counsel for the school board; and
 4. Whether the school district may be liable for improper, negligent, unprofessional, or erroneous services provided by an attorney selected by B. C. Christopher to perform the functions outlined in the proposed agreement.
Through correspondence dated November 2, 1992, B. C. Christopher, a financial advisor, contacted the board of education for U.S.D. #343. The correspondence states in part:
 "It is our understanding that your school district is considering a bond issue for a school building improvement program. In order to proceed with the planning of this project, we suggest you appoint us, by executing this agreement, as your financial advisor."
The correspondence then sets forth a number of services included in the proposal. Among the services are the following:
 "2. We will help you and your county election officers set up a mail ballot election if you decide to hold one.
. . . .
 "4. We will provide at our expense an unqualified approving opinion as to the legality of the bonds and have our attorney furnish all legal work necessary for the issuance of the bonds that is requested of them. This does not include fighting any litigation that might arise or any local attorney expenses.
. . . .
 "7. We will have our attorneys prepare a Notice of Sale containing all information a purchaser would normally require and which might help attract a better interest rate for the bonds. We will be present and help the school board conduct the actual sale of the bonds and will aid in selecting the most desirable bid."
These appear to be the provisions of concern to you.
In State ex rel. Stephan v. Williams, 246 Kan. 681 (1990), the Kansas Supreme Court determined that an individual was engaged in the unauthorized practice of law. In its opinion, the court stated:
 "In determining what constitutes the `practice of law' no precise, all-encompassing definition is advisable, even if it were possible. Every matter asserting the unauthorized practice of law must be considered on its own facts on a case-by-case basis. In State v. Schumacher, 214 Kan. 1, 519 P.2d 1116 (1974), we stated:
 "`Although it may sometimes be articulated more simply, one definition [of "practice of law"] has gained widespread acceptance, and has been adopted by this Court:
 "`"A general definition of the term frequently quoted with approval is given in Eley v. Miller, 7 Ind. App. 529, 34 N.E. 836, as follows:
 "`"`As the term is generally understood, the practice of law is the doing or performing of services in a court of justice, in any manner depending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be [pending] in a court.' State, ex rel., v. Perkins, 138 Kan. 899, 907, 908, 28 P.2d 765
(1934)."
 "`The court in Perkins, also pointed out that "[o]ne who confers with clients, advises them as to their legal rights, and then takes the business to an attorney and arranges with him to look after it in court is engaged in the practice of law." 138 Kan. at 908. The quotation from the Eley case has been adopted as the general rule in 7 C.J.S., Attorney and Client, sec. 3g (1937).
 "`A more recent source defines the practice of law as "the rendition of services requiring the knowledge and application of legal principles and technique to serve the interests of another with his consent." R.J. Edwards, Inc. v. Hert, 504 P.2d 407, 416 (Okla., 1972).'" State ex rel. Stephan v. Williams, 246 Kan. at 689.
The test for determining what is the unauthorized practice of law is set forth in State ex rel. Stephan v. O'Keefe, 235 Kan. 1022,1034 (1984):
 "This court in State ex rel., v. Hill, 223 Kan. 425, 426, 573 P.2d 1078 (1978), adopted the test for determining what is the unauthorized practice of law thusly:
 "`The main general test in unlawful practice of law cases seems to be whether or not an attorney-client relationship exists. That is, whether the person whose conduct is under scrutiny represented or implied he had legal knowledge beyond that of a layman and provided "professional" assistance to a "client." The customer pays for the "skill," "special knowledge" or "expertise" of the seller. There is a personalization of services provided. That is, the customer provides the data or raw material and the "expert" assembles, compiles, organizes, etc. and using the "expertise" (real or imagined) provides a legal service. . . .'"
In its correspondence, the financial advisor states that "we will provide at our expense an unqualified approving opinion as to the legalityof the bonds and have our attorney furnish all legal work necessary for the issuance of the bonds that is requested of them," and "will have ourattorneys prepare a Notice of Sale containing all information a purchaser would normally require and which might help attract a better interest rate for the bonds." While the wording in the correspondence is somewhat misleading, it is our understanding that the financial advisor will retain outside bond counsel who will provide these services. Pursuant to the proposal, the financial advisor would pay the fees for the services of the bond counsel; however, the financial advisor will not confer with the school district as a client seeking legal advice, or advise the school district as to its legal rights, arranging with an attorney to look after any pursuant action in a court of law. See State, ex rel. v.Hill, 233 Kan. 425, 436 (1978); State, ex rel. v. Schmitt, 174 Kan. 581,588, (1953). Because the financial advisor has not held itself out as an expert in the area of law and will itself give no advice regarding the legal rights or obligations of the school district, the financial advisor is not, through its proposal, engaged in the unlawful practice of law.
School districts and other subdivisions of the state have only such powers as are conferred upon them by statute, specifically or by necessary implication, and any reasonable doubt as to the existence of such power should be resolved against its existence. Hobart v. U.S.D. No. 309,230 Kan. 375, 383 (1981). Given the authority of a school district to sue and be sued (K.S.A. 72-8201), to execute contracts (K.S.A. 72-8201), and to appoint officers and employees who serve at the pleasure of the board (K.S.A. 72-8202e), it is determined that a school district, by necessary implication, has the authority to hire legal counsel. As the attorney serves at the pleasure of the board, a school district is not obligated to use the services of the same attorney for all purposes. The scope of the services to be provided by an attorney is dependent upon any agreement entered into by the school district and the attorney.
Under the express provisions of the proposal, the attorney selected by the financial advisor will "furnish all legal work necessary for the issuance of the bonds that is requested of them." The proposal does not obligate the school district to use the services of the attorney selected by the financial advisor, nor does it prohibit the school district from appointing legal counsel to provide the services necessary for issuing bonds.
It is clearly the prerogative of the supreme court, pursuant to its authority conferred under section 1 of article 3 of the Kansas constitution, to define the practice of law. State v. Schumacher,214 Kan. 1, 9 (1974). Included in that power is the supreme court's inherent right to prescribe conditions for admission to the bar and to define, supervise, regulate, and control the practice of law, whether in or out of court. Id at 10. D.R. 7-104 provides:
 "(A) During the course of his representation of a client a lawyer shall not:
 "(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to so so.
 (2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if such interests of such person are or have a reasonable possibility of being in conflict with the interests of his client." (Emphasis added.)
It is further provided in M.R.P.C. 4.2 that:
 "In representing a client, a lawyer shall not communicate about the subject of representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." (Emphasis added.)
The canons and disciplinary rules have been adopted by the court "in the belief that such canons and disciplinary rules voice general standards of behavior required of members of the legal profession and define a level of conduct below which no attorney may fall without becoming liable to disciplinary action." 1992 Kan. Ct. R. Annot. 225. As noted above, the financial advisor is not engaged in the practice of law. Based upon the information provided, it is presumed that the financial advisor is not an attorney. Likewise, as no information regarding the agreement between the school district and its present counsel is provided, we do not know whether the school district is currently represented in this matter. Under such circumstances, the financial advisor is not subject to the provisions of D.R. 7-104 and M.R.P.C. 4.2. The proposal does not result in an impermissable impediment to the on-going relationship between the school district and the district's present legal counsel.
Prior to the issuance of bonds by a unified school district, the school district is under an obligation to meet the statutory requirements for such issuance. In the correspondence submitted by B.C. Christopher, there is a statement indicating that the bond proposal being considered by U.S.D. #343 is for "a school building improvement program." Therefore, it appears that U.S.D. #343 would be required to follow the procedure set forth in K.S.A. 72-6761 for issuance of general obligation bonds. Failure by the school district to meet all statutory requirements, regardless whether the school district follows the advice of legal counsel, may affect the validity of the issuance of bonds by the school district. See Unified School District v. Hedrick, 203 Kan. 478
(1969).
In review, the facts provided indicate that B. C. Christopher, a financial advisor, has not held itself out as an expert in the area of law and will give no advice regarding the legal rights or obligations of the school district; therefore, it is not engaged in the unlawful practice of law. The proposal does not obligate the school district to use the services of the attorney selected by the financial advisor, nor does it prohibit the school district from appointing legal counsel to provide the services necessary for issuing bonds. The proposal does not result in an impermissable impediment to the on-going relationship between the school district and the district's present legal counsel. Failure by the school district to meet all statutory requirements, regardless of whether the school district follows the advice of legal counsel, may affect the validity of the issuance of bonds by the school district.
Very truly yours,
 ROBERT T. STEPHAN Kansas Attorney General
 Richard D. Smith Assistant Attorney General
RTS:JLM:RDS:jm