The Honorable Jerry L. Mershon Administrative District Judge 21st Judicial District of Kansas, Division Two 100 Courthouse Plaza, P.O. Box 158 Manhattan, Kansas 66502-0002
Dear Judge Mershon:
You seek our opinion regarding the authority of attorneys acting under the United States army legal assistance program to provide certain legal services to military clients without having a license to practice in the state of Kansas. The issue arises when military pro se litigants prepare pleadings and other documents relevant to step-parent adoption proceedings with the assistance of such attorneys, a majority of whom are not licensed to practice in this state. The assistance provided consists of counseling military clients of the state's adoption requirements, assisting in the drafting of necessary papers to be filed in the district courts of Kansas and explaining the steps for completing and filing the paper work. The attorneys in question do not actually file the documents or appear in court on behalf of the pro se litigants.
Clearly the assistance provided in these instances constitutes the practice of law as that term has been interpreted by the Kansas appellate courts.
 "Although it may sometimes be articulated more simply, one definition [of `practice of law'] has gained widespread acceptance, and has been adopted by this Court:
 "A general definition of the term frequently quoted with approval is given in Eley v. Miller, 7 Ind. App. 529, 34 N.E. 836, as follows:
 "`As the term is generally understood, the practice of law is the doing or performing of services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court.' State, ex rel., v. Perkins, 138 Kan. 899, 907, 908, 28 P.2d 765
(1934).
 "The court in Perkins, also pointed out that `[o]ne who confers with clients, advises them as to their legal rights, and then takes the business to an attorney and arranges with him to look after it in court is engaged in the practice of law.' 138 Kan. at 908. The quotation from the Eley case has been adopted as the general rule in 7 C.J.S., Attorney and Client, sec. 3g (1937).
 "A more recent source defines the practice of law as `the rendition of services requiring the knowledge and application of legal principles and technique to serve the interests of another with his consent.' R.J. Edwards, Inc. v. Hert, 504 P.2d 407, 416
(Okla. 1972)." State v. Schumacher, 214 Kan. 1, 9 (1974), quoted with approval in State ex rel. Stephan v. Williams, 246 Kan. 681, 689 (1990).
It is equally clear that the Kansas Supreme Court has the right, pursuant to article 3, section 1 of the Kansas constitution, "to prescribe conditions for admission to the bar, and to define, supervise, regulate and control the practice of law. Martin v.Davis, 187 Kan. 473, 478-79, 357 P.2d 782 (1960)." State ex rel.Stephan v. O'Keefe, 235 Kan. 1022, 1036 (1984). The court has held this to be true "whether [the practice is] in or out of court, . . . [and] notwithstanding acts of the legislature in the exercise of its police power to protect the public interest and welfare." Martin v. Davis, 187 Kan. at 479.
 "In the interpretation of the laws and the administration of justice it is essential that there be members of the bar of ability, adequate learning and sound moral character. One of the important functions of this court is to admit only such persons to the practice of law, to suspend or expel those found unworthy, and to prevent the practice of law by unauthorized persons." Williams 246 Kan. at syl para. 3.
Finally, the Kansas Supreme Court has held that the license or permission to practice law in one state is not extraterritorial, and that there is no rule of comity between states which requires this state to give one licensed in another state authority to practice law here. Perkins, 138 Kan. at 902.
Having determined that the activities in question constitute the practice of law, the question then becomes whether such practice is actually occurring in this state, and if so whether pertinent federal statutes override the state's requirement for licensure.
We are informed that all counseling and drafting of documents by attorneys of the army legal assistance program is performed on the base at Fort Riley. Pursuant to K.S.A. 27-105 and L. 1889, ch. 150, the state of Kansas in 1889 ceded exclusive jurisdiction over the Fort Riley military reservation, reserving only the right to serve civil or criminal process within the reservation for rights acquired, obligations incurred or crimes committed in the state but outside the reservation, and the right to tax certain persons and entities within the reservation. The Kansas Supreme Court has held that when the federal government takes exclusive jurisdiction of property within the state, the area is taken out from under the control of state laws. Miller v. Hickory Grove School Bd., Dist.No. 4, 162 Kan. 528 (1947). See also Murphy v. Love,249 F.2d 783, cert. den., 355 U.S. 958, 78 S.Ct. 544, 2 L.Ed.2d 533 (1958) (military reservations are separate entities and do not constitute a part of the state in which they are located for general jurisdictional purposes); Orlovetz v. Day Zimmerman, Inc.,18 Kan. App. 2d 142, 145-46 (1993) (only federal law and such Kansas law as was in effect at the time of cession and not in conflict with federal law or as is subsequently enacted and specifically adopted and made applicable by Congress apply to activities and operations within the enclave). At least one other jurisdiction has held that state licensing laws have no application to persons doing business on a federal reservation. Lynch v. Hammock,165 S.W.2d 369 (Ark. 1942) (state license to practice medicine not required for physician treating federal contractors on property over which the United States has exclusive jurisdiction). See alsoJurisdiction Over Federal Areas Within the States: Report to theInterdepartmental Committee for the Study of Jurisdiction OverFederal Areas Within the States Part II, 184, footnote 16 (June 1957). Finally, in finding that the state courts had jurisdiction to hear divorce and other domestic proceedings for residents of Fort Riley, the Kansas Supreme Court stated that "at least until state laws are superseded by appropriate federal legislation, the validity of existing legislation should be sustained," thereby implying that state law would succumb to conflicting federal legislation. Craig v. Craig, 143 Kan. 624, 631 (1936).
Recognizing that the documents drafted by military attorneys on the base are being filed in state court, thus arguably constituting the practice of law extending outside the parameters of the federal enclave, we look one step further to determine if federal law has superseded the state's common law unauthorized practice of law strictures. 10 U.S.C. § 1044 authorizes the secretary of the army to provide legal assistance in connection with the personal civil legal affairs of certain active and retired members of the armed forces under his jurisdiction, and of such members' families. The judge advocate general under the jurisdiction of the secretary is given authority to establish and supervise legal assistance programs to implement the provisions of10 U.S.C. § 1044. Pursuant to that authority, the secretary of the army has promulgated the army legal assistance program, Army Regulation 27-3 (October 30, 1992). Section 3-6 allows for legal assistance in adoption cases as "may be provided based on the availability of expertise and resources." Section 3-7 sets forth the types of services that may be provided. While subsection g of that regulation, dealing with in-court representation, acknowledges that attorneys must be members of the bar in the jurisdiction in which they seek to appear, no such reference exists for subsection f, dealing with "pro se assistance." The term "pro se assistance" is defined in subsection f as "the help rendered to non-lawyer clients to enable those clients to file legal documents, papers, or pleadings in civil proceedings, such as small claims or uncontested divorces. Legal assistance may include preparing necessary documents and assisting with their submission to local courts." Thus, the regulation provides for the type of assistance you have questioned in the absence of state licensure.
 "State law may run afoul of the Supremacy Clause in two distinct ways: The law may regulate the Government directly or discriminate against it [citations omitted], or it may conflict with an affirmative command of Congress." North Dakota v. United States, 495 U.S. 423, 434, 110 S.Ct. 1986, 109 L.Ed.2d 420, 432
(1990).
In North Dakota v. United States, the state of North Dakota and the United States had concurrent jurisdiction over the military bases at issue. The question was whether the state's liquor reporting and labeling requirements could be enforced with regard to liquor sold to the federal enclaves for domestic consumption. Based on the state's twenty-first amendment authority, the fact that the requirements were imposed on liquor suppliers rather than the military directly, the lack of discrimination in application of the statutory requirements to the base sales and in the absence of a direct conflict with an express command of Congress, the United States Supreme Court held that the state's requirements were not violative of the supremacy clause of the United States constitution. With regard to the requirement that military attorneys be licensed by the state in order to counsel and assist military clients on the base, there is no federal constitutional provision such as the twenty-first amendment to lend strength to the state's requirement, and the requirement would be imposed on the government directly rather than on a person or entity having dealings with the government. Additionally, while Congress does not expressly preempt the field by its language in 10 U.S.C. para. 1044, a licensing requirement for the provision of the services at issue may effectively obstruct the army's provision of such services (due to the nature of assignments and the fact that military attorneys are relocated frequently), and therefore would impose a substantial burden on the federal government. See Wisconsin Public Intervenor v.Mortier, 501 U.S. 597, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991); (pre-emption occurs to the extent state and federal law actually conflicts; conflict arises when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress); Don't Tear It Down, Inc. v. PennsylvaniaAve. Development Corp., 642 F.2d 527 (App. D.C. 1980) (insofar as local laws may substantially impede federal activities or directly place prohibition on federal government, they are presumptively invalid). We therefore believe that any requirement for licensure of military attorneys to provide counseling and document preparation assistance to military clients on the base would be subject to successful challenge under the supremacy clause.
In conclusion, while we recognize the importance of requiring licensure and regulation by the state of those who wish to practice law here and the Kansas Supreme Court's inherent authority to require such licensure and regulation, due to fact that the activities in question are occurring within a federal enclave and based on the supremacy clause, in our opinion attorneys acting under the authority of the United States army legal assistance program may counsel and assist pro se military clients with the preparation of necessary documents to be filed in Kansas courts in specified civil proceedings without obtaining a license to practice in the state of Kansas.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm