No. 62,443

STATE OF KANSAS, *ex rel.*, ROBERT T. STEPHAN, *Petitioner*, v.
JOAN E. ADAM, *Respondent*.

(760 P.2d 683)

Opinion filed August 24, 1988.

*Robert T. Stephan*, attorney general, *John W. Campbell*, deputy attorney general, and *Steve A. Schwarm*, assistant attorney general, were on the brief for petitioner.

*Michael A. Barbara*, of Topeka, was on the brief for respondent.

*Robert C. Foulston*, Chairman, Supreme Court Nominating Commission, of Wichita, was on the brief *amicus curiae*.

The opinion of the court was delivered by

LOCKETT, J.: The State of Kansas through Attorney General Robert T. Stephan filed a petition in quo warranto claiming that the respondent, Joan E. Adam, should be ousted from the position of Non-Lawyer Member, Second Congressional District, Supreme Court Nominating Commission because she has been granted a temporary permit to practice law and is no longer qualified to hold the position of a non-lawyer member of the Commission.

In 1979, Respondent was appointed to a position on the Supreme Court Nominating Commission. She was reappointed in 1984 and her current term expires on July 1, 1989.

In January 1988, after successfully completing the requirements for a Juris Doctor degree at Washburn University School of Law, respondent requested the Supreme Court to grant her "a temporary permit to practice law." Subsequent to the respondent's taking the attorney's oath, the Supreme Court issued her a temporary permit to practice law in the State of Kansas.

It is the attorney general's position that, by the acquisition of a temporary permit, respondent assumed the status of a lawyer and, therefore, must be ousted from the Commission. The respondent (1) denies that quo warranto is a proper procedure to challenge her qualifications as a member of the Commission and (2) claims that once appointed to the Commission, she is qualified to serve her term as a non-lawyer member of the Commission, so long as she continues to reside in the Second Congressional District. We disagree with both the petitioner and the respondent.

Quo warranto proceedings are specifically allowed as original actions in the Supreme Court by both the constitutional and statutory law of this state. Kansas law is clear that the proper means by which a person is to be removed from a public office is the initiation of a quo warranto action. *State, ex rel. Miller v. Richardson*, 229 Kan. 234, 623 P.2d 1317 (1981). When the attorney general determines that any person appointed to a commission by the governor does not possess the requisite qualifications prescribed by law for the appointment, the statutory law requires the attorney general to commence ouster proceedings against that person. K.S.A. 75-714.

We agree with the attorney general's declaration that the

Supreme Court Nominating Commission is an integral part of the process by which justices of the Kansas Supreme Court are selected and appointed. Individuals selected as justices become part of the court which is the final arbitrator of our state's constitution and laws. The selection and appointment process by which justices are chosen is a matter of statewide concern. Questions raised as to the legality of the composition of the Commission are of great public importance and deserve to be resolved with speed and finality. Since the Kansas Constitution provides the Supreme Court with the "general administrative authority over all courts in this state" (Kan. Const. Art. 3, § 1), the issues of this case go to the very heart of the administration of justice and the court system in Kansas.

The attorney general states that the sole issue is the definition of the constitutional and statutory qualifications of the members of the Commission. Since this court is charged by statute with making rules and setting standards for the admission of attorneys to the bar, we must determine the precise definition of the term "non-lawyer." (See K.S.A. 7-103 and Supreme Court Rule 701 *et seq.* [1987 Kan. Ct. R. Annot. 201-17])

In his memorandum in support of the petition in quo warranto, the attorney general correctly states the rules of constitutional interpretation:

"A constitution must be interpreted liberally to carry into effect the principles of government which it embodies. It deals broadly with general subjects, and its language should not be interpreted in any narrow, refined or subtle sense, but should be held to mean what the words imply to the common understanding of men." *State v. Sessions*, 84 Kan. 856, Syl. ¶ 1, 115 Pac. 641 (1911).

The attorney general's position is based on *Moore v. Wesley*, 125 Kan. 22, 25, 262 Pac. 1035 (1928), where this court stated:

"[A] person who holds a permit issued by this court authorizing him to practice law until the next bar examination is not irregularly admitted to practice law, but *ad interim* is a regularly qualified practicing attorney."

The attorney general argues that (1) after Adam took the attorney's oath she changed her status from a non-lawyer to a lawyer, and (2) allowing her to remain a member of the Commission violates the constitutional intent to balance membership of the Commission between lawyers and non-lawyers.

Article 3, Section 2 of the Kansas Constitution originally provided that the Supreme Court shall be composed of one chief

justice and two associate justices elected by the electors of the state. In 1900, § 2 was amended to enlarge the court to seven justices, elected by the electors of the state. To remove the selection of the justices of the Kansas Supreme Court from partisan politics, the section was amended again in 1958, when the Supreme Court Nominating Commission was established. Article 3, Section 5(e) of the Kansas Constitution provides:

"The supreme court nominating commission shall be composed as follows: One member, who shall be chairman, chosen from among their number by the members of the bar who are residents of and are licensed in Kansas; one member from each congressional district chosen from among their number by the resident members of the bar in each such district; and one member, who is not a lawyer, from each congressional district, appointed by the governor from among the residents of each such district."

Article 3, Section 5(f) of the Kansas Constitution requires the legislature to fix the terms of, and to provide the procedure for selection and certification of, the members of the Commission. Although Article 3 is silent as to how vacancies are to be filled, Article 2, Section 18 of the Kansas Constitution requires the legislature to provide the method of filling all vacancies not otherwise provided for in the constitution.

As required by the constitution, the legislature passed implementing statutes for the Supreme Court Nominating Commission, which include K.S.A. 20-119 through 20-138. The relevant statutory provisions are K.S.A. 20-122, K.S.A. 20-124, and K.S.A. 20-127.

K.S.A. 20-122 provides in part:

"The clerk of the supreme court may use the roster of attorneys in his office licensed to practice law in Kansas, and the edition of the Martindale-Hubbell legal directory, current at the time of mailing the ballots, for ascertaining the names and places of residence of those entitled to receive ballots *and for ascertaining the qualifications of those nominated for membership on the commission.*" (Emphasis added.)

Martindale-Hubbell is a national legal directory that lists individuals admitted to the practice of law in the United States and its territories. Individuals holding a temporary permit to practice law are not listed in that publication.

K.S.A. 20-124 provides in part:

"The governor shall appoint the first non-lawyer members of the commission, one (1) from each congressional district, and certify the names of such appointees to the clerk of the supreme court on or before May 15, 1959. Thereafter, *as terms*

*of office of non-lawyer members are about to expire,* their successors shall be appointed by the governor and the names of such appointees certified by the governor to the said clerk before their terms of office begin." (Emphasis added.)

K.S.A. 20-127 provides:

"If the chairman or any other members of the commission elected by the members of the bar shall cease to be a member of the bar entitled to engage in the general practice of law in Kansas, or if the chairman shall change his place of residence from the state or if any other member of the commission, whether elected or appointed, shall change his place of residence to a congressional district other than that from which he was elected or appointed, the chairman or such other member as to whom such change of condition exists, shall no longer be a member of the commission and a vacancy shall exist as to his membership."

Each of these sections was enacted in 1959 and has not been amended.

The Supreme Court recognizes four categories of individuals who may appear in the courts of this state: (1) members of the bar who have shown that they possess good moral character and the requisite general education, and who have been examined by the Board of Law Examiners and issued their licenses to practice law; (2) individuals who have graduated from an accredited law school and have a temporary permit to practice law; (3) legal interns, who are law students assigned to attorneys, agencies, and public bodies who have requested their service and who agree to assign members of the bar to supervise and be responsible for the activities of the legal intern; and (4) non-lawyers, who may represent only themselves and not others. Both the Kansas Constitution and the implementing statutes recognize but two categories of individuals qualified to be members of the Commission, *i.e.,* "members of the bar" and "non-lawyers."

The issuance of a temporary permit to practice law is governed by the rules of this court. The first mention of a temporary permit to practice law is found in 100 Kan. xxi (1917), No. 24 of the Rules of the Supreme Court of Kansas, which states:

"No. 24. TEMPORARY PERMIT TO PRACTICE. Any applicant for admission to the bar who is a graduate of an approved law school, or who has been admitted to practice in the highest court of any other state, may, pending the hearing of his application, also file with the clerk of this court a request for a temporary permit to practice law until the next examination to be held by the board of law examiners. If the court shall find that the applicant has had no opportunity to take an earlier examination, and that the circumstances are such as to justify it, a temporary permit will be granted, expiring at the date of the next examination, effective upon his taking an oath to support the constitution of the

United States, and the constitution of the state of Kansas, and conform to the requirements of the attorney's oath prescribed by the rules of the court."

The present rule, Rule 705 (1987 Kan. Ct. R. Annot. 209), was adopted in the 1970's after Kansas began using the multistate testing service to determine the qualifications of those making application to become a member of the Kansas bar. Rule 705 provides that any applicant for admission to the bar may file for a "temporary permit to practice law." Such application must be accompanied by a written statement from an attorney actively engaged in the practice of law in Kansas that such attorney will supervise and be responsible for the acts of the applicant during the period covered by the temporary certificate. The permit becomes effective upon the applicant taking the same oath taken by bar admittees, including that the applicant will "discharge his or her duties as an attorney and counselor of the Supreme Court and all other courts of the State of Kansas with fidelity both to the Court and to his or her cause." Supreme Court Rule 704(i) (1987 Kan. Ct. R. Annot. 207). The permit expires when the results of the bar examination are announced if the applicant fails the examination; if the applicant passes the examination, the permit then expires on the date he or she is to be regularly admitted to the bar. Supreme Court Rule 705 (1987 Kan. Ct. R. Annot. 209).

Is the status of one issued a temporary permit to practice the same as one issued a license to practice law? "Temporary" is defined as "That which is to last for a limited time only, as distinguished from that which is perpetual, or indefinite, in its duration. Opposite of permanent." Black's Law Dictionary 1312 (5th ed. rev. 1979). A "permit" is a written license or warrant, issued by a person in authority, empowering the grantee to do some act not forbidden by law, but not allowable without such authority. Black's Law Dictionary 1026 (5th ed. rev. 1979). A temporary permit to practice law is not a right of property, but is merely a "temporary permit" to do that which would otherwise be unlawful. A temporary permit is subject to revocation at any time and its revocation is not unconstitutional as an impairment of a contract right or as an unlawful divesting of property rights.

Supreme Court Rules allow applicants for admission to the bar, who receive a temporary permit, to practice law in Kansas. However, an individual issued a temporary permit to practice law has only a restricted right to represent clients. To obtain a

temporary permit to practice law, an individual must be a graduate of an accredited law school and must file an application to be admitted to the bar accompanied by a written statement from an attorney actively engaged in the practice of law that the attorney is willing to supervise and be responsible for the acts of the applicant during the period covered by the temporary permit. The holder of a temporary permit to practice law has no contractual or property right to the permit and can be divested of the permit without being afforded constitutional procedural due process. The holder of a temporary permit who successfully completes the bar examination becomes a member of the bar after that individual's name is placed on the roll of attorneys and he or she is issued a license to practice law.

A member of the bar, licensed to practice law, does have a property right in the license. A member of the bar cannot be deprived of his or her license (right to practice law), unless he or she is afforded the constitutional procedural due process right of sufficient notice of the nature of the charge and the opportunity for a timely hearing in a meaningful manner.

Both Article 3, Section 5 of the Kansas Constitution and the implementing legislation require that lawyer members of the Commission be licensed to practice law in this state. Since this court already allowed temporary permits when the constitutional amendment and implementing statutes for selecting members of the Commission were drafted, the drafters had the opportunity to include law school graduates with temporary permits as eligible for membership on the Commission as members of the bar, had they so wished. Because the drafters did not exercise that opportunity, it is clear that all individuals who are not licensed members of the bar qualify as non-lawyers for appointment to the Commission.

Following the procedure set out in K.S.A. 20-122 to determine the qualifications of the respondent as a non-lawyer member of the Commission, a check of the roll of licensed attorneys in the clerk's office and the Martindale-Hubbell legal directory reveals that, at this time, respondent's name does not appear. Therefore, the respondent is qualified to be a non-lawyer member of the Commission.

Respondent argues that, once appointed to the Commission as a non-lawyer member, she is qualified to serve her term so long

as she continues to reside in the Second Congressional District. We disagree.

By approving the amendment to Article 3 of the Kansas Constitution, the voters of this state gave up their right to directly elect the justices of the Kansas Supreme Court. The process by which citizens selected the members of this court by a direct election was replaced by a procedure where the Commission nominates and submits to the governor the names of three qualified individuals to fill a vacancy on this court. To insure that non-lawyers retained a voice in the selection of the nominees to the Supreme Court, the constitution requires that the nonpartisan nominating commission be composed of a chairman, who is a member of the bar, and an equal number of members of the bar and non-lawyers from each congressional district.

If the name of a non-lawyer member of the Commission is placed on the roll of attorneys licensed to practice law in Kansas, then, as a member of the bar, that individual will have the right to vote in the election of lawyer members to the Commission and the qualifications to stand for election to the Commission as a member of the bar. However, such a person, upon becoming a member of the bar, no longer qualifies as a non-lawyer member of the Commission. The Clerk of the Supreme Court, after placing the non-lawyer's name on the roll of attorneys licensed to practice law in Kansas, will then be required by statute to notify the governor of a vacancy on the Commission of the non-lawyer member from that congressional district.

Judgment for the respondent.