In re Elgene ROBINSON, Ronald Reynolds, Jean C. Hubbard, and Vernie R. Whaley, Debtors.

John E. FOULSTON, United States Trustee, Plaintiff,

v.

Harrold E. JONES and Harrold E. Jones Agency, Inc., Defendants.

Bankruptcy Nos. 91–13760–7, 91–13518–7, 91–13738–7 and 91–13297–7. Adv. Nos. 92–5032, 92–5030, 92–5031 and 92–5028.

United States Bankruptcy Court, D. Kansas.

Oct. 5, 1993.

William F. Schantz, Office of the U.S. Trustee, Wichita, KS.

Harrold E. Jones, pro se, and for the Harrold E. Jones Agency, Inc.

## MEMORANDUM OPINION

JOHN T. FLANNAGAN, Bankruptcy Judge.

Plaintiff appears by William F. Schantz of the Office of the United States Trustee. Defendant Harrold E. Jones ("Jones") of Wichita, Kansas, appears *pro se.* Defendant Harrold E. Jones Agency, Inc. (the "Jones Agency"), does not appear by counsel as required by the rules of this Court, but Harrold E. Jones, its principal shareholder, purports to act on its behalf in these proceedings.

The Court finds that these proceedings are core under 28 U.S.C. § 157 and that the Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984.

The United States Trustee, plaintiff in each of these adversaries, alleges that the defendants, Harrold E. Jones and the Harrold E. Jones Agency, Inc., have engaged in the unauthorized practice of law by (1) advising and counseling debtors about the preparation of their bankruptcy petition and schedules; (2) preparing applications to allow debtors to pay their filing fees in installments while requesting full payment in advance from them for defendants' services; (3) answering some of the questions on the bankruptcy schedules without consulting the debtors; and (4) advertising defendants' services in a way that would lead lay persons interested in bankruptcy to believe that they would receive qualified legal assistance from Harrold E. Jones and the Harrold E. Jones Agency, Inc.

Plaintiff asks the Court to enter an order permanently enjoining the defendants from engaging in the unauthorized practice of law in any bankruptcy proceeding in this judicial district and requiring them to disclose and disgorge all funds received as a result of the unauthorized practice of law.

Defendant concedes that he is not an attorney at law and maintains that he has done nothing illegal.

These matters were tried to the Court on November 11, 1992. The United States Trustee offered into evidence Jones's business card, an advertisement placed by Jones regarding his services, and a bankruptcy questionnaire which the defendants use in their business. Jones's business card states:

Insurance ● Accountant
Legal Assistance
Non–Attorney

**HARROLD E. JONES, INC.**
5210 E. 21st
Wichita, Kansas 67208

Harrold E. Jones
Business Manager          (316)687–9410
(Plaintiff's Exhibit # 3.)

The February 25 through March 2, 1992, edition of *Pennypower,* East Edition, volume 21, number 9, was also entered into evidence. At page 25, the following advertisement appears:

SOLVE DEBT PROBLEMS   *      *  Low Cost
Bankruptcy Service        *   *    Filing $200   *
HARROLD E. JONES      *       5210 E 21st    *
687–9410

(Plaintiff's Exhibit # 2.)

Two separate newspaper articles that discuss bankruptcy were also admitted as evidence: "Bankruptcy, Down and Out (of Debt)," *Knight–Rider Tribune,* date of publication and page number unknown; and "Court adds to lenders' losses in bankruptcy," *The Wichita Eagle,* July 1, 1991, page 9D con'd to 20D. (Plaintiff's Exhibit # 4.) The evidence shows that Jones gave these articles to clients who were considering using his bankruptcy service.

The evidence further shows that Jones's clients who did decide to file bankruptcy were then given a document entitled "Bankruptcy Information Form." Attached as a cover sheet to the form is a page labeled "Instructions For Bankruptcy Question-

naire." The cover sheet to the questionnaire states:

## INSTRUCTIONS FOR BANKRUPTCY QUESTIONNAIRE

It is very important you answer EACH question on this questionnaire completely so that we may prepare the bankruptcy petition properly. If you are uncertain of any questions, please indicate and write down what, and why you don't understand and we can contact you concerning that question.

When an office appointment is scheduled, please bring with you all documents relating to your financial affairs, such as notes, loan agreements, wage statements, income tax returns, legal descriptions to real property, overdue tax statements, collection letters, lawsuit documents, etc. These documents will help us to prepare the bankruptcy petition accurately.

## PLEASE NOTE

. ALL SERVICES PROVIDED FOR BANKRUPTCY FILING ASSISTANCE IS NON–ATTORNEY SERVICES.
ALL BANKRUPTCY FILING ASSISTANCE IS PRO SE (AS IF YOU ARE FILING YOURSELF)
WE DO NOT GIVE LEGAL ADVICE OR REPRESENTATIONS BY OUR STAFF.

(Plaintiff's Exhibit # 5.)

The questionnaire requests information regarding income, expenses, assets, liabilities, and any pending lawsuits. On the third page of the questionnaire, the debtor is asked to state the approximate value of various items of personal property, including household goods and furnishings, clothing and personal effects, jewelry, tools used in his or her occupation, equipment used in his or her business, stocks, bonds, certificates of deposit, individual retirement accounts or pension plans, cash on hand or money in the bank, interest in any trust as beneficiary, and vehicles.

The United States Trustee entered into evidence a blank questionnaire and a completed questionnaire. (Plaintiff's Exhibit # 5 and # 6, respectively.) The cover sheet on the completed questionnaire (Plaintiff's Exhibit # 6) does not include the "PLEASE NOTE" section contained in the instructions submitted with Plaintiff's Exhibit # 5.

Plaintiff's Exhibit # 6 contains a section asking for the value of various items of personal property. In the margin of this section, the individual who completed the exhibit wrote, "Is property inside house exempt?"

Transcripts from the § 341 meetings of each bankruptcy case captioned herein were admitted into evidence at trial.

Plaintiff's Exhibit # 7 is the transcript of the § 341 meeting for Elgene Robinson, Case No. 91–13760, held on December 16, 1991. It contains the following excerpt from an exchange between the debtor, Elgene Robinson, and Richard A. Wieland of the United States Trustee's Office:

MR. WIELAND: You did not go to Harold Jones for assistance?

MR. ROBINSON: Harold Jones?

MR. WIELAND: Harold Jones.

MR. ROBINSON: He's the man I filed bankruptcy with.

MR. WIELAND: Okay. So you went to Harold Jones to help you with these schedules?

MR. ROBINSON: Yes.

MR. WIELAND: Did you pay him any money?

MR. ROBINSON: Yes.

MR. WIELAND: How much?

MR. ROBINSON: Two hundred dollars.

MR. WIELAND: Did Mr. Jones fill out these schedules for you based upon the information you gave him?

MR. ROBINSON: Yes, he did.

MR. WIELAND: Question 9 on the schedule asked that you list all payments to anybody who helped prepare the schedules for you. Mr. Jones isn't listed. Could you tell me why that's not listed. Did you leave that up to Mr. Jones to make that determination?

MR. ROBINSON: He's the one that filled out the papers for me.

MR. WIELAND: And you paid your filing fee in installments. Is that correct?

MR. ROBINSON: With Jones, yes.

MR. WIELAND: And Mr. Jones filled out that page for you as well?

MR. ROBINSON: Yes.

. . . .

MR. WIELAND: Okay. And then did you file your schedules? Did you file these down at the courthouse?

MR. ROBINSON: No, I didn't.

MR. WIELAND: Who filed them for you?

MR. ROBINSON: I guess Jones did.

MR. WIELAND: Mr. Jones?

MR. ROBINSON: He said he would mail them in.

MR. WIELAND: That's all the questions I have. Thank you.

(Plaintiff's Exhibit # 7 at page 10, line 6, through page 12, line 11.)

The United States Trustee offered into evidence the transcript of Vernie R. and Cherlene M. Whaley's § 341 meeting held on December 3, 1991, in Case No. 13297 (Plaintiff's Exhibit # 8). Cherlene Whaley testified that debtors had paid Harrold Jones $200.00 to assist them in preparing their bankruptcy schedules. The following is a portion of the transcript of testimony given at the Whaleys' first meeting of creditors:

THE TRUSTEE [J. Michael Morris, the Chapter 7 Trustee]: Okay. And he [Harrold Jones] advised you with regard to whether your taxes would be dischargeable or not?

MRS. WHALEY: He didn't say they would be discharged. He said that I would eventually have to pay them.

(Plaintiff's Exhibit # 8 at page 5, line 21 through page 6, line 1.)

The first meeting of creditors in the Jean C. Hubbard bankruptcy, Case No. 91–13738, was held on December 16, 1991. The following is an excerpt from the transcript of testimony given at that meeting (Plaintiff's Exhibit # 9):

MR. WIELAND: Mrs. Hubbard, my name's Dick Wieland and I'm an attorney for the United States Trustee. I have just a few questions about your filing. My understanding is that Mr. Jones helped you prepare the schedules.

MS. HUBBARD: Yes, he did.

MR. WIELAND: Did you pay him a fee for that?

MS. HUBBARD: Two hundred dollars.

MR. WIELAND: And you paid for that already?

MS. HUBBARD: Yes, I did.

MR. WIELAND: Okay. And then you have paid for your filing fee in installments. Is that correct?

MS. HUBBARD: Yes, I have.

MR. WIELAND: Have you paid your first installment?

MS. HUBBARD: Yes, I have.

MR. WIELAND: Did Mr. Jones talk to you about that it's inappropriate to pay somebody to render services in helping you prepare the schedules and then paying the filling fee in installments?

MS. HUBBARD: I don't understand.

THE TRUSTEE [Edward J. Nazar, the Chapter 7 Trustee]: What he's saying is Jones has been paid in full, but the clerk hasn't been. Did he explain to you that may not be right?

MS. HUBBARD: No, he didn't. He just told me I could arrange to pay it.

MR. WIELAND: So he told you you could arrange to pay it?

MS. HUBBARD: Yes.

THE TRUSTEE: But you couldn't arrange to pay Mr. Jones' fee?

MS. HUBBARD: No. He was up front.

MR. WIELAND: On question 9 it relates to payments related to debt counseling on bankruptcy, and that question also deals with preparation of the petition. Did Mr. Jones help you answer these questions?

MS. HUBBARD: No. He asked them, I answered them.

MR. WIELAND: Okay. When you did question 9 did you question whether or not his services applied to question 9? Whether or not Mr. Jones should be shown here on question 9 that indicated you paid $200 to Mr. Jones?

MS. HUBBARD: No. I didn't question him. I just—he told me over the phone when I called him from Hutchinson that I had to pay in advance.

MR. WIELAND: Okay. Did you fill out the schedules there in his office?

MS. HUBBARD: Yes, I did.

MR. WIELAND: Okay. How did you determine what exemptions to take? Did you look up the exemption law? How did you know to?

MS. HUBBARD: He just told me what I had to do.

MR. WIELAND: Could you kind of elaborate a little bit more on that for me?

MS. HUBBARD: I don't really understand.

THE TRUSTEE: In your exemption—in the schedules there is a declaration of exemptions. In it there is a reference to a state statute. Did he tell you about that state statute? Did he tell you what you could keep in bankruptcy?

MS. HUBBARD: No. I don't have anything other than that stuff that's on that secured note.

MR. WIELAND: Okay. When you came to your properties that you claimed exempt you put down $500. How did you know that that was exempt?

MS. HUBBARD: He told me.

MR. WIELAND: Mr. Jones told you?

MS. HUBBARD: Yes.

MR. WIELAND: And then he cited K.S.A. 60–2830 for you?

MS. HUBBARD: He recited something. I don't remember really for sure.

MR. WIELAND: Did he give you any information on bankruptcy to read beforehand before you start filling this out?

MS. HUBBARD: He explained, but I don't think I read—well, I did read something.

MR. WIELAND: Do you remember what it was?

MS. HUBBARD: No, honestly.

MR. WIELAND: Was it a newspaper article? Does that ring a bell?

MS. HUBBARD: I think so.

MR. WIELAND: Did he explain the difference or did that article explain the difference between a Chapter 7 and Chapter 13?

MS. HUBBARD: He explained that to me.

MR. WIELAND: Mr. Jones explained that to you?

MS. HUBBARD: Yes.

MR. WIELAND: Did Mr. Jones inform you that he was not an attorney?

MS. HUBBARD: Yes, he did.

(Plaintiff's Exhibit # 9, at page 4, line 23 through page 8, line 18.)

The United States Trustee entered into evidence the transcript of the § 341 meeting for Ronald R. and Sharon A. Reynolds held on December 17, 1991, in Case No. 91–13518 (Plaintiff's Exhibit # 10). These debtors testified that Jones had assisted them in the preparation of their schedules and that they had paid him $200 for his assistance, despite the fact that they did not answer question 9 on their schedules and had requested that their filing fee be paid in installments.

The trial concluded with the testimony of Harrold E. Jones on behalf of the defendants. Jones testified that he is an accountant and insurance agent. He is also the president and chairman of the board of directors of the Harrold E. Jones Agency, Inc., a closely-held Kansas corporation, located at 5210 East 21st Street, Wichita, Kansas. He stated that he did not claim to be an attorney at law and that he believed that he had done nothing illegal. He presented no exhibits and no other witnesses.

Jones testified that he gave the articles referred to as Plaintiff's Exhibit # 4 to clients who were considering using his bankruptcy service, and that when a client decided to file bankruptcy, he gave them the document referred to as Plaintiff's Exhibit # 5, "Bankruptcy Information Form."

The United States District Court for the District of Kansas has promulgated a number of rules regulating the conduct of attorneys who are admitted to practice law in federal courts in Kansas. D.Kan.Rule 401, *et seq.* Under these rules, attorneys admitted to practice in the State of Kansas are allowed

to apply for admission to practice before the federal courts in the state. D.Kan.Rule 402 provides:

> Those persons admitted to practice in the courts of the State of Kansas who are in good standing in any and all bars to which they have ever been admitted ... may apply for admission to the bar of this court.

Under Kansas law the Kansas Supreme Court has said: "The authority to admit a person to the bar of Kansas and to authorize the practice of law in Kansas is vested solely in the Kansas Supreme Court." *State ex rel. Stephan v. Williams,* 246 Kan. 681, 691, 793 P.2d 234 (1990).

The Kansas Supreme Court recognizes only four categories of individuals who may appear in the courts of this state: (1) members of the bar who have been issued a license to practice; (2) graduates of an accredited law school who have been issued a temporary permit to practice law; (3) legal interns who are law students working with attorneys, agencies and public bodies that have requested their service and that agree to assign members of the bar to supervise and be responsible for the activities of the intern; and (4) non-lawyers, who may represent only themselves, and not others. *State ex rel. Stephan v. Adam,* 243 Kan. 619, 623, 760 P.2d 683 (1988).

In *State v. Schumacher,* 214 Kan. 1, 9, 519 P.2d 1116 (1974), the court stated that the Supreme Court for the State of Kansas is vested with the authority to define the practice of law. The court made the following remarks regarding the meaning of the phrase "practice of law":

> Although it may sometimes be articulated more simply, one definition has gained widespread acceptance, and has been adopted by this Court:
>
>> A general definition of the term frequently quoted with approval is given in *Eley v. Miller,* 7 Ind.App. 529, 34 N.E. 836, as follows:
>>
>>> "As the term is generally understood, the practice of law is the doing or performing of services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court." *State, ex rel., v. Perkins,* 138 Kan. 899, 907, 908, 28 P.2d 765 (1934).

The court, in *Perkins,* also pointed out that "[o]ne who confers with clients, advises them as to their legal rights, and then takes the business to an attorney and arranges with him to look after it in court is engaged in the practice of law." 138 Kan. at 908. The quotation from the *Eley* case has been adopted as the general rule in 7 C.J.S., Attorney and Client, § 3g (1937).

A more recent source defines the practice of law as "the rendition of services requiring the knowledge and application of legal principles and technique to serve the interests of another with his consent." *R.J. Edwards, Inc. v. Hert,* 504 P.2d 407, 416 (Okla., 1972).

It therefore appears that a good argument can be made that Kansas law applies under D.Kan.Rule 401 when an issue of unauthorized practice of law is presented to a federal court sitting in Kansas. If so, Kansas law would furnish the standards for deciding who can practice law and when such practice is unauthorized.

There are also a number of bankruptcy cases from other jurisdictions that discuss the nature of the practice of law as it relates to assistance given to debtors in preparing their petition and schedules and filing a bankruptcy. The decisions uniformly hold that advising and counseling clients regarding various provisions of the Bankruptcy Code, including exemptions, dischargeability, and the automatic stay; discussing the advantages of one chapter over another; and preparing petitions, schedules and applications for payment of the filing fee in installments constitute the unauthorized practice of law. *See Matter of Sands,* 22 B.R. 132 (Bankr.D.N.J.1982); *O'Connell v. David,* 35 B.R. 141 (Bankr.E.D.Pa.1983); *In re Anderson,* 79 B.R. 482 (Bankr.S.D.Cal.1987);

*In re Bachmann,* 113 B.R. 769 (Bankr. S.D.Fla.1990); *In re Herren,* 138 B.R. 989 (Bankr.D.Wyo.1992); *In re McCarthy,* 149 B.R. 162 (Bankr.S.D.Cal.1992); *In re Harris,* 152 B.R. 440 (Bankr.W.D.Pa.1993); *In re Calzadilla,* 151 B.R. 622 (Bankr.S.D.Fla. 1993).

Some of these bankruptcy cases find expressly that the question is determined by reference to state law. *In re Anderson,* 79 B.R. 482 (Bankr.S.D.Cal.1987); *In re Bachmann,* 113 B.R. 769 (Bankr.S.D.Fla.1990). However, since the instant proceedings involve a federal court administering a federal statute, one wonders whether the proper view is that federal law controls, albeit that the federal court might choose the state law standards as determinative of whether there has been an unauthorized practice of law. The United States Trustee's brief does not touch this question and the Court's limited research has not been particularly helpful. The Court does note that 28 U.S.C. § 1654 addresses the subject of appearance personally or by counsel in the federal courts:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

Perhaps this statute or the inherent power of the court to regulate those who appear before it provide the requisite authority to view the problem as one of federal law, rather than of state law. Presumably, the federal court would, absent some federal interest dictating otherwise, adopt the state law standards for unauthorized practice of law in making its determination.

The Court's research has uncovered one bizarre case touching slightly on the question in the context of a criminal prosecution. *See United States v. Peterson,* 550 F.2d 379 (1977). A criminal defendant was allowed to have a disbarred attorney as his counsel during his criminal trial in the Wisconsin federal court. After defendant's conviction, the disbarred attorney, the trial counsel, was himself prosecuted in federal court using the federal Assimilated Crimes Act. The prosecution based its case against the disbarred attorney on a Wisconsin state statute prohib-iting the unlicensed practice of law in Wisconsin. Since the trial was held on federal property, the prosecution argued that the Assimilated Crimes Act, a federal statute, incorporated the Wisconsin statute, making its violation a federal crime of the same magnitude as prescribed by the state statute. In reversing a conviction of the disbarred attorney in the district court, the 7th Circuit Court of Appeals stated in dicta:

> We believe the unauthorized practice of law in federal court in violation of § 1654 and the rules of the court to constitute "misbehavior" within the meaning of that term, and that such practice could tend to obstruct the administration of justice. The use of the contempt power to punish in such circumstances is not new and it is adequate. [Citations omitted.]

In this case, whatever may be the source of the law, state or federal, Jones does not claim to be an attorney, a graduate of an accredited law school, or a law student. Neither does he suggest that his company is authorized to practice law in the State of Kansas or before this Court. Rather, Jones's defense is that in his view, he has never done anything illegal; that he does not claim to be an attorney; and that he does not understand what he or his company has done that is improper.

■ The Court finds that the evidence establishes that the defendants have engaged in the unauthorized practice of law under the standards expressed by Kansas law, which the Court adopts as controlling in this case. Jones's business card, advertisement, and heading on the bankruptcy questionnaire all clearly state that the defendant and his company are holding themselves out as more than mere typists and form providers. Jones uses the terms "legal assistance" and "legal technician" to describe his services. The testimony given by the debtors in these four cases proves that Jones and his company have engaged in the unauthorized practice of law by providing legal assistance to debtors in preparing their bankruptcy petitions, schedules, and their applications to pay their filing fees in installments.

Jones's acknowledgement that he is not an attorney, and the statements in the bankruptcy questionnaire instructions that debtors are filing their bankruptcy *pro se* and that Jones and the Agency do not give legal advice are insufficient to negate the facts established by the evidence.

The bankruptcy cases cited above uniformly hold that a permanent injunction is appropriate relief against a defendant who is engaged in the unauthorized practice of law. *See* also *State ex rel. Stephan v. Williams*, 246 Kan. at 692, 760 P.2d 683.

The United States Trustee requests that the defendants be required to disgorge the fees they have received from these debtors. In the alternative, the United States Trustee suggests that the defendants should be required to disgorge that portion of the payments received that are in excess of a reasonable fee for typing services.

■■■ Although Jones and the Agency are not authorized to practice law, § 329 of the Bankruptcy Code applies to them. *In re McCarthy*, 149 B.R. at 167; *In re Telford*, 36 B.R. 92 (Bankr.9th Cir.1984); *In re Harris*, 152 B.R. 440 (Bankr.W.D.Pa.1993).

Section 329 of the Bankruptcy Code provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

Under § 329, a bankruptcy court may require a lay person who is not authorized to practice law to disgorge all fees received from a debtor for services provided. *In re Grimes*, 115 B.R. 639, 650 (Bankr.D.S.D. 1990).

■■■ Defendants presented no evidence regarding an appropriate fee for typing services. There are no facts in the record to support the defendants' retention of any portion of the fees they have received from the debtors. The requirement to disgorge the entire amount is supported by the defendants' actions in assisting the debtors in these cases in preparing applications to pay their filing fees in installments, in direct violation of Fed.R.Bankr.P. 1006(b)(3). Based on the evidence, the Court finds that the defendants should be required to disgorge all funds they have received from the debtors in these cases.

IT IS THEREFORE BY THE COURT ORDERED that the defendants, Harrold E. Jones, or his agents, and the Harrold E. Jones Agency, Inc., or its agents, are permanently enjoined from the unauthorized practice of law in any bankruptcy case or proceeding filed or to be filed in the District of Kansas.

IT IS FURTHER ORDERED that the defendants disgorge all funds collected in the bankruptcy cases captioned above to the appropriate debtors. The defendants shall comply with this order within thirty (30) days of the filing of this Memorandum Opinion. Within forty-five (45) days of the entry of this Memorandum Opinion, defendants shall file with the Clerk of this Court a statement of compliance under oath that the funds have been reimbursed to the debtors in each case. Defendants shall also serve a copy of the statement on the United States Trustee.

IT IS FURTHER ORDERED that within thirty (30) days of the entry of this Memorandum Opinion, the defendants shall provide the United States Trustee with a list of all bankruptcy petitions prepared by Harrold E.

Jones, or his agents, or the Harrold E. Jones Agency, Inc., or its agents, that have been filed in this Court, and an accounting of the fees collected by the defendants in those cases. The United States Trustee may then file a motion for an order requiring the defendants to disgorge any fees collected by the defendants in those other cases.

The foregoing discussion shall constitute findings of fact and conclusions of law under Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52(a).

IT IS SO ORDERED.