Patsy Johnson, Executive Administrator Kansas State Board of Nursing Landon State Office Building 900 S.W. Jackson, Room 551 Topeka, Kansas 66612-1230
Dear Ms. Johnson:
As Executive Director for the Kansas State Board of Nursing, you request our opinion regarding amendments to K.S.A. 65-1120 contained in 1997 Senate Bill No. 164. K.S.A. 65-1120 sets forth grounds for discipline of nurses and grounds for denial of licenses. You are concerned with the amendments to subsection (a) which bar licensure of persons with any of the felony convictions specified in article 34 of chapter 21 of the Kansas Statutes Annotated. As amended the statute now provides, in relevant part:
 "(a) Grounds for disciplinary actions. The board may deny, revoke, limit or suspend any license, certificate of qualification or authorization to practice nursing as a registered professional nurse, as a licensed practical nurse, as an advanced registered nurse practitioner or as a registered nurse anesthetist that is issued by the board or applied for under this act or may publicly or privately censure a licensee or holder of a certificate of qualification or authorization, if the applicant, licensee or holder of a certificate of qualification or authorization is found after hearing:
. . . .
 "(2) to have been guilty of a felony or to have been guilty of a misdemeanor involving an illegal drug offense, if the board determines, after investigation, that such person has not been sufficiently rehabilitated involving an illegal drug offense unless the applicant or licensee establishes sufficient rehabilitation to warrant the public trust, except that notwithstanding K.S.A. 74-120 no license, certificate of qualification or authorization to practice nursing as a licensed professional nurse, as a licensed practical nurse, as an advanced registered nurse practitioner or registered nurse anesthetist shall be granted to a person with a felony conviction for a crime against persons as specified in article 34 of chapter 21 of the Kansas Statutes Annotated and acts amendatory thereof or supplemental thereto;"
Before addressing your specific questions, it is necessary to determine the rights of a nursing licensee once a license is granted. The Fourteenth Amendment to the United States Constitution, commonly known as the Due Process Clause, provides that no state shall "deprive any person of life, liberty, or property, without due process of law."
In order for the Fourteenth Amendment to apply, a nurse would have to have a property interest in his or her license. In Board of Regents v. Roth, 408 U.S. 564,33 L.Ed.2d 548, 92 S.Ct. 2701 (1972) the Court determined:
 "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. . . .
 "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents v. Roth, 408 U.S. at 577, 33 L.Ed.2d at 561.
In a companion case, the Court elaborated on its definition:
 "A person's interest in a benefit is a `property' interest for due process purposes if there are . . . rules or mutually explicit understandings that support his claim of entitlement to the benefit. . . ." Perry v. Sindermann, 408 U.S. 593, 601, 33 L.Ed.2d 570, 92 S.Ct. 2694, 2699 (1972).
Whether a license to practice a profession or an occupation falls within the Supreme Court's expressed definition of property was addressed in Richardson v. Town of Eastover, 922 F.2d 1152, 1156-1157 (4th Cir. 1991):
 "A license issued by the state which can be suspended or revoked only upon a showing of cause creates a property interest protected by the Fourteenth Amendment. . . . Where a license or similar benefit may be withdrawn at will, however, the holder of the license or benefit has no property interest because he has no legitimate claim of entitlement to something that can be withdrawn at the whim of the grantor. . . .
 "While an entitlement is required before a property interest is implicated, the entitlement need not be given explicitly. An entitlement to a renewal may be implied, for instance, from policies, practices and understanding, if state law or other sources support a finding of such an entitlement. . . .
 "Similarly, mutual expectations may create an entitlement in a license. For instance, a state-issued license for the continued pursuit of the licensee's livelihood, renewable periodically on the payment of a fee and revocable only for cause, creates a property interest in the licensee."
See also, Kansas Racing Management, Inc. v. Kansas Racing Commission, 244 Kan. 342 (1989) (holder of racetrack facility owner license or facility manager license has property right in license); State ex rel. Stephan v. Adam, 243 Kan. 619 (1988) (member of the bar, licensed to practice law, has property right in license); Brown v. South Carolina State Board of Education, 391 S.E.2d 866 (S.C. 1990) (a teacher certificate necessary for employment is a protected property interest); Green v. Brantley, 719 F. Supp. 1570
(N.D.Ga. 1989) (flight examiner had due process property interest in his Federal Aviation Administration "Certificate of Authority" which afforded means by which he earned his living); Medina v. Rudman, 545 F.2d 244
(1st Cir. 1976) (once racing track license is granted, property right under state law comes into being).
Based upon the structure of the Kansas Nurse Practice Act, we believe a nurse has a property right in a nursing license once the nurse receives the nurse's license, certificate of qualification, or authorization to practice. [For convenience sake, we will only address licenses in the remainder of this opinion.]
You ask whether the prohibition on licensure of a person with an article 34, chapter 21 person felony is limited to felonies occurring after the effective date of the amendments (July 1, 1997), or if it also applies to article 34 person felonies committed before that date. The amendment refers to "a felony conviction." We believe these words are clear and unambiguous, and that no statutory construction is necessary — there is nothing in this phrase to limit application to new felonies. We believe it applies to all such felonies, whether the felonious act or conviction occurred before or after the effective date of the amendment (July 1, 1997). We do not believe that this constitutes a retrospective application of the statute (which is not favored at law) because, as will be discussed, we believe this portion of the amendment only applies to those persons applying for a new license after July 1, 1997.
You ask whether the prohibition on granting a license applies to licensees who may be renewing or reinstating a license but have a prior conviction. The Kansas Nurse Practice Act sets forth procedures nurses must follow to obtain a license and the rights a person has once that license is obtained. For instance, an applicant for a license to be a professional nurse must meet certain requirements and then pass an examination. "Upon successfully passing such examinations the board shall issue to the applicant a license to practice nursing as a registered professional nurse." K.S.A. 65-1115(c)(1). The initial issuance of a license grants to the licensee certain rights, including a property right in the license so that it may not be taken away without due process. See, e.g., State ex. rel. Stephan v. Smith,242 Kan. 336 (1987).
Under the statutory scheme, so long as a nurse continues to meet certain requirements, including "the requirements set forth in K.S.A. 65-1115 or 65-1116 and amendments thereto in effect at the time of initial licensure of the applicant" the nurse receives a "renewal license" K.S.A. 65-1117(a). Reinstatement of a lapsed license is different, however. The nurse must essentially furnish "proof that the applicant is competent and qualified." K.S.A. 65-1117(b)
The issue is whether the words in the amendment "no license . . . shall be granted" refer to just the initial issuance of the license or renewals also. Because a license becomes a type of property right once issued, we believe that a "renewal license" is something different from the issuance of the initial license. Black's Law Dictionary defines "grant" as follows:
 "To bestow; to confer upon some one other than the person or entity which makes the grant. . . . Transfer of property real or personal by deed or writing. . . . To give or permit as a right or privilege. . . ." Black's Law Dictionary 700 (6th ed. 1990) .
We believe that the initial issuance of a license is legally a "grant" of a license and certain property rights. A renewal cannot be considered a grant of a license because a renewal is essentially a continuation of the property interest which has already been granted. In order to read the bar to issuance of a license so as to apply to renewal licenses, it would have to provide "no license, certificate of qualification or authorization to practice nursing as a licensed professional nurse . . . shall be granted or renewed. . . ." In essence, we do not believe the bar on issuance of a license applies to renewal licenses, only the initial grant of a license. We do believe, however, the absolute bar does apply to reinstatement of lapsed licenses because of the requirements of K.S.A.65-1117(b).
We believe there is a rational basis for such a distinction between existing licensees and new applicants. Applying the prohibition to nurses who have already been granted a license but who have a preexisting felony would amount to a retrospective application of the statute. Retrospective application of a statute is not favored, especially when it affects substantive rights.
 "A statute operates prospectively unless its language clearly indicates that the legislature intended that it operate retrospectively. . . . This rule is normally applied when an amendment to an existing statute or a new statute is enacted which creates a new liability not existing before under the law or which changes the substantive rights of the parties." Jackson v. American Best Freight System, 238 Kan. 322
(1985).
This amendment concerning the bar to licensure for felony convictions in K.S.A. 65-1120 clearly affects substantive rights and there is no clear indication in the amendatory language that it operate retrospectively. Therefore, we believe the absolute bar on granting a license to a person convicted of an article 34, chapter 21 person felony applies only to applicants for a new license after July 1, 1997, the effective date of the amendments to K.S.A. 1996 Supp.65-1120. If a licensee is subsequently convicted of such a crime, the board could proceed under its discretionary authority to revoke the license "unless the applicant or licensee establishes sufficient rehabilitation to warrant the public trust." If it is discovered that a nurse seeking renewal or reinstatement has previously been convicted of such a crime, the board could refuse to renew or reinstate under its discretionary authority to revoke a license "unless the applicant or licensee establishes sufficient rehabilitation to warrant the public trust."
You also ask whether the bar on licensure would apply to students who entered nursing school before the effective date of the amendments, but who have a prior person felony conviction under article 34, chapter 21.
The state has police power to regulate the practice of health care providers. State ex. rel. Schneider v. Liggett, 223 Kan. 610, 615 (1978). Prior to licensure, a person has no "property right" in the practice of nursing and is not entitled to constitutional procedural due process rights. See, e.g., State ex rel. Stephan v. Adam 243 Kan. 619, (1988), Kansas Racing Management, Inc. v. Kansas Racing Comm'n, 244 Kan. 342 (1989). One limit on the state's exercise of police power is one of substantive due process or equal protection (i.e. discrimination against the class of felons). The Kansas Supreme Court explained the standard for reviewing legislation when challenged on substantive due process grounds:
 "If a statute is attacked as violating due process, the test is whether the legislative means selected have real and substantial relation to the objective sought. This rule has been restated in terms of whether the statute is reasonable in relation to its subject and is adopted in the interests of the community." Cott v. Peppermint Twist Mgt. Co., 253 Kan. 452, Syl. ¶ 18 (1993).
This standard is functionally equivalent to the rational basis test in the context of equal protection challenges. For equal protection purposes the class is felons, which is not a suspect class (one based on gender, race, age, etc.) so the test is the "rational basis" test.
 "Under the `rational basis' test, if there is any rational relationship between the act and a legitimate governmental objective, the act passes muster. Under this test one challenging the constitutionality of the act bears the burden of showing no rational relationship exists between the means and the end." State v. Risjord, 249 Kan. 497, 501-02 (1991).
Nurses routinely deal with patients who are in a weak and dependent condition. The level of trust between a patient and nurse must be uncompromised. The absolute bar on felons as nurses is only for those with article 34 person felony convictions, meaning violent, person felonies such as murder, manslaughter, kidnapping, etc. We believe there is a rational relationship between an absolute bar against future licensure of nurses with such convictions and the goal of protecting the public health and promoting the profession of nursing.
We note, as an aside, that in De Veau v. Braisted,363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960), the Supreme Court upheld a statute which prohibited any person from being licensed as a longshoreman if that person had a felony conviction. The court held it was "a reasonable means for achieving a legitimate state aim, namely, eliminating corruption on the waterfront."363 U.S. at 157. We believe that if a longshoreman can be denied a license for any felony conviction, a nurse certainly can be denied a license for a violent felony conviction, as set forth in the person felonies in article 34 of the Kansas statutes.
Another possible constitutional issue raised by application of the law to student nurses with prior felonies is whether the prohibition on licensure of certain felons amounts to an improper ex post facto law.
Article I, Section 10, of the United States Constitution provides: "No State shall . . . pass any . . . ex post facto law." This constitutional provision only applies to penal statutes. Collins v. Youngblood,497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); State v. Meyers, 260 Kan. 669 (1996). In De Veau, the prohibition on licensure as a longshoreman applied to prior felonies, so the Court had to determine whether it was a prohibited ex post fact law. The court described an ex post fact law:
 "The mark of an ex post facto law is the imposition of what can fairly be designated punishment for past acts. The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation, such as the proper qualifications for a profession. [Citation omitted]. No doubt is justified regarding the legislative purpose of § 8. The proof is overwhelming that New York sought not to punish ex-felons, but to devise what was felt to be a much-needed scheme of regulation of the waterfront, and for the effectuation of that scheme it became important whether individuals had previously been convicted of a felony." 363 U.S. at 161.
In Meffert v. Medical Board, 66 Kan. 723 (1903), aff'd. 195 U.S. 625, the court upheld a new statute allowing the Medical Board to deny a license to practice medicine based upon a felony conviction. The court said it was not an invalid ex post facto law:
 "The revocation of a license to practice medicine for any of the reasons mentioned in the statute was not intended to be, nor does it operate as, a punishment, but as a protection to the citizens of the state."
We believe that the clear purpose of the amendments to K.S.A. 65-1120 are for the protection of the public. They are not punitive and do not constitute an ex post facto law. Consequently, a nursing student who applies for a license after July 1, 1997, with a person felony conviction as specified in article 34, chapter 21 must be denied a license.
In determining the scope of the amendments to K.S.A.65-1120, we have attempted to determine the Legislature's intentions. We note that the Legislature could constitutionally have gone further and barred licensure (or made revocation mandatory) for persons with other convictions, so long as there was a rational basis for barring licensure. For instance, the bar for licensure for article 34 felonies does not prohibit licensure of a person convicted of any of the felony sex offenses set forth in article 35. We believe that a bar of licensure or revocation of licensure for such crimes would not be punitive in nature, but would be a rationally based measure designed for the protection of the citizens of this state. It is unclear to us why the legislatively enacted ban was drawn so narrowly.
Finally you ask whether the absolute bar applies to convictions which occur outside of Kansas. The bar on licensure applies to persons with a "felony conviction for a crime against persons as specified in article 34 of chapter 21 of the Kansas Statutes Annotated."
The Legislature is presumed to intend that a statute be given a reasonable construction so as to avoid unreasonable or absurd results. Todd v. Kelly, 251 Kan. 512
(1992). It would make no sense to distinguish between crimes committed in another state and those committed in Kansas. We believe that by saying "as specified," the Legislature meant any criminal conviction in any jurisdiction which meets the elements of a crime as set forth in the person felonies in article 34 of chapter 21 of Kansas Statutes Annotated. We do not believe it is limited to Kansas convictions.
In summary, we believe that the amendments to K.S.A. 1996 Supp. 60-1120 which provide "no license, . . . shall be granted" apply only to applicants for new licenses after the effective date of the amendment, July 1, 1997. The felonies to which the amendment applies, however, include felonies committed before or after the effective date of the act.
The felonies may be from another jurisdiction, so long as the elements are the same as those of crimes specified in the person felonies in article 34 of chapter 21.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Steve Phillips Assistant Attorney General
CJS:JLM:SP:jm