No. 105,257

In the Matter of JAMES M. ROSWOLD, *Respondent*.
(249 P.3d 1199)

Opinion filed April 22, 2011.

*Alexander M. Walczak*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., Topeka, argued the cause, and *James M. Roswold*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the Disciplinary Administrator's office against the respondent, James M. Roswold, of Kansas City, Missouri, an attorney admitted to the practice of law in Kansas in 1994.

On June 15, 2010, the Disciplinary Administrator's office filed a formal complaint against respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on July 7, 2010. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on August 24, 2010, where the respondent was personally present and represented by counsel. The hearing panel determined respondent violated KRPC 1.1 (2010 Kan. Ct. R. Annot. 406) (competence); 1.3 (2010 Kan. Ct. R. Annot. 422) (diligence); 1.4(a) (2010 Kan. Ct. R. Annot. 441) (communication); 1.5(d) (2010 Kan. Ct. R. Annot. 458) (fees); 5.1(a) and (c)(2) (2010 Kan. Ct. R. Annot. 573) (responsibilities of partners, managers, and supervisory lawyers); 5.5(b) (2010 Kan. Ct. R. Annot. 579) (unauthorized practice of law); 8.4(a) (2010 Kan. Ct. R. Annot. 603) (misconduct); and Supreme Court Rule 116(a) (2010 Kan. Ct. R. Annot. 202) (admission *pro hac vice* of out-of-state attorney). After the hearing's conclusion, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

## "FINDINGS OF FACT

. . . .

"2. In 1990, the Missouri Supreme Court admitted the Respondent to the practice of law. At that time, the Respondent began working for Deacy & Deacy in Kansas City, Missouri. In 1993, the Respondent left the Deacy firm and joined Copilevitz, Bryant, Grey & Jennings, P.C. At the Copilevitz firm, the Respondent began working for Mark Schmid. [Footnote: Mr. Schmid was licensed to practice law only in the state of Missouri.]

"3. In 1994, while employed by the Copilevitz firm, the Respondent sought and obtained a license to practice law in Kansas. The Respondent remained at the Copilevitz firm, working for Mr. Schmid until 1995. At that time, Mr. Schmid formed his own firm and the Respondent left the Copilevitz firm to work for Mr. Schmid as an associate.

"4. Thereafter, in 1999, the Respondent and Mr. Schmid formed a partnership, Schmid & Roswold, P.C. Throughout the time that they practiced together, their practice included personal injury, worker's compensation, and medical malpractice litigation.

"5. On February 10, 2004, [J.C.] . . . contacted Mr. Schmid regarding a potential medical malpractice case against four physicians, Johannes Heynes, Michael McCoy, James Fischer, and Craig Vosburgh. Mr. Schmid accepted the representation and agreed that the firm would bring suit in Kansas against the four physicians in behalf of [J.C.].

"6. After agreeing to represent [J.C.], Mr. Schmid discussed the case with the Respondent. Mr. Schmid prepared the petition for the Respondent's signature. The Respondent reviewed and signed the petition. On March 18, 2004, the petition was filed in the Shawnee County District Court, case number 04C00393. The Respondent was the attorney of record in case number 04C00393.

"7. At no time during the pendency of case number 04C00393, did the Respondent apply for the limited admission of Mr. Schmid to the practice of law in Kansas for the purposes of representing [J.C.] pursuant to [Supreme Court Rule]116. Even though he was not admitted to practice in Kansas, Mr. Schmid was lead counsel in [J.C.]'s case. The Respondent merely reviewed and signed pleadings for Mr. Schmid.

"8. In April, 2004, the Respondent received a letter from the court advising that case number 04C00393 had been placed on the court's docket for setting or dismissal on July 9, 2004, pending service, submission of a case management order, request for a scheduling conference, and/or the completion of discovery.

"9. On July 16, 2004, the court dismissed case number 04C00393 without prejudice. At that time, the Respondent and Mr. Schmid allowed the case to be dismissed because they had been unable to find and qualify a medical expert as to the quality of care provided by the physicians.

"10. On December 31, 2004, the Respondent refiled [J.C.]'s suit against the four physicians in the District Court of Shawnee County, Kansas, case number

05C00011. Again, the Respondent reviewed and signed the pleadings. The Respondent was, likewise, the attorney of record in 05C00011.

"11. Again, at no time during the pendency of case number 05C00011, did the Respondent apply for the limited admission of Mr. Schmid to the practice of law in Kansas for the purposes of representing [J.C.] pursuant to [Supreme Court Rule] 116. Mr. Schmid continued to be lead counsel for [J.C.] and, practically speaking, did all the work on [J.C.]'s case. The Respondent merely reviewed and signed pleadings for Mr. Schmid.

"12. On October 23, 2006, the Respondent dismissed Dr. Heynes and Dr. McCoy because he had been unable to find an expert witness to establish their negligence.

"13. On April 30, 2007, Dr. Fischer filed a motion for summary judgment. On May 4, 2007, Dr. Vosburgh filed a motion for summary judgment. The motions were received by Schmid & Roswold, P.C. and were directed to Mr. Schmid. Mr. Schmid did not inform the Respondent that Drs. Fischer and Vosburgh had filed motions for summary judgment. Mr. Schmid intentionally concealed the motions from the Respondent.

"14. On May 24, 2007, Mr. Schmid wrote to [J.C.], mentioned the summary judgment motions, provided a detailed summary of the case status, and recommended settlement. Mr. Schmid, however, did not prepare responses to the motions for summary judgment.

"15. Thereafter, on July 13, 2007, the court issued a memorandum opinion and entry of judgment, granting the remaining defendants' unopposed motions for summary judgment and dismissing [J.C.]'s case against the remaining two physicians, Dr. Fischer and Dr. Vosburgh. Mr. Schmid did not inform [J.C.] or the Respondent that [J.C.]'s case had been dismissed. Mr. Schmid intentionally concealed the court's memorandum opinion and entry of judgment from the Respondent.

"16. In August, 2007, Mr. Schmid spoke by telephone with [J.C.] regarding her case. Mr. Schmid falsely told her that nothing had changed regarding the case prospects and he would see what he could do to get it resolved.

"17. On October 10, 2007, Mr. Schmid spoke with [J.C.] by telephone again. At this time, Mr. Schmid indicated that he believed that he could settle the case for approximately $30,000. [J.C.] authorized Mr. Schmid to settle the case for between $30,000 and $35,000.

"18. On December 16, 2007, Mr. Schmid again spoke with [J.C.] by telephone. During that conversation, Mr. Schmid falsely informed [J.C.] that he had settled the case for $32,500.

"19. On December 17, 2007, [J.C.] came to the offices of the Respondent and Mr. Schmid. Mr. Schmid presented [J.C.] with a settlement sheet. According to the settlement sheet, Mr. Schmid had advanced $17,676.14 in expenses, Schmid & Roswold, P.C. was entitled to a fee of $10,833.33, and [J.C.]'s net recovery was $3,990.53.

"20. Mr. Schmid presented [J.C.] with a release and a trust account check in the amount of $3,990.53, dated December 17, 2007. At no time, did the Schmid & Roswold, P.C.'s trust account have monies belonging to [J.C.].

"21. [J.C.] was not satisfied with the way in which the settlement proceeds were divided. As a result, she contacted Gary White, an attorney in Topeka, Kansas. Mr. White looked into the case for [J.C.] and learned that the last two remaining defendants in 05C00011 had been granted summary judgment in July, 2007. Mr. White informed [J.C.] of his findings.

"22. On December 21, 2007, [J.C.] contacted Mr. Schmid and informed him that she was very unhappy with the settlement and that she was considering filing a bar complaint. Mr. Schmid agreed to meet [J.C.] to discuss the matter further.

"23. On December 28, 2007, Mr. Schmid met with [J.C.] in Topeka, Kansas. At that time, Mr. Schmid provided a check to [J.C.] in the amount of $10,833, the amount that he had previously claimed was his fee.

"24. On January 18, 2008, Mr. White wrote to [J.C.] concerning the assistance he had provided her and declining to represent her further. In the letter, Mr. White detailed the conduct of Mr. Schmid. Mr. White sent a copy of the letter to the Disciplinary Administrator.

"25. Throughout the time that Schmid & Roswold, P.C. represented [J.C.], the Respondent never met [J.C.]. The Respondent failed to seek the limited admission of Mr. Schmid pursuant to [Supreme Court Rule] 116. Despite the fact that the Respondent was attorney of record in both cases filed in the District Court of Shawnee County, Kansas, the Respondent did nothing to ensure that [J.C.] was adequately represented.

### "CONCLUSIONS OF LAW

"1. Based upon the Respondent's stipulation and the above findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.5(d), KRPC 5.1(a), KRPC 5.1(c)(2), KRPC 5.5(b), KRPC 8.4(a), and [Supreme Court Rule] 116, as detailed below.

"2. Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to exercise appropriate thoroughness and preparation in his representation of [J.C.]. Despite that he was attorney of record in both cases filed in the District Court of Shawnee County, Kansas, the Respondent took no action to ensure that [J.C.] was adequately represented. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The Respondent was responsible for the representation of [J.C.]. He was the attorney of record in the cases filed in her behalf. In order to provide diligent representation to [J.C.], the Respondent would have had to take a more active role in her representation. Thus, the Hearing Panel

concludes that the Respondent failed to diligently and promptly represent [J.C.] in violation of KRPC 1.3.

"4. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent was attorney of record and responsible for keeping [J.C.] apprised of the status of the case. The Respondent never met with nor communicated with [J.C.]. The Respondent failed to take an active role in the case and thus was kept in the dark about the filing of the motions for summary judgment and the ultimate dismissal of 05C00011 as it pertained to Drs. Fischer and Vosburgh. Because the Respondent failed to adequately communicate with [J.C.], the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"5. Contingent fee agreements must be in writing. KRPC 1.5(d) provides the requirement in this regard:

'A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (f) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, and the litigation and other expenses to be deducted from the recovery. All such expenses shall be deducted before the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the client's share and amount and the method of its determination. The statement shall advise the client of the right to have the fee reviewed as provided in subsection (e).'

The Respondent entered into a contingency fee agreement with [J.C.] but failed to reduce the agreement to writing. Thus, the Hearing Panel concludes that the Respondent violated KRPC 1.5(d).

"6. KRPC 5.1(a) provides:

'A partner in a law firm and lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the rules of professional conduct.'

The Respondent was a partner in the firm and had appropriate managerial control and authority. The Respondent was the only Kansas attorney and was, as a result, the *de facto* managing partner for all Kansas cases. In this case, the Respondent failed to 'make reasonable efforts to ensure that the firm [had] in effect measures giving reasonable assurance that all lawyers in the firm conform to the rules of professional conduct' with regard to [J.C.]'s case. KRPC 5.1(a). Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 5.1(a).

"7. In certain circumstances, one lawyer will be held responsible for another lawyer's violations of the rules of professional conduct. KRPC 5.1(c)(2) provides the rule in this regard:

'A lawyer shall be responsible for another lawyer's violation of the rules of professional conduct if . . . the lawyer is a partner or has comparable managerial authority in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.'

Clearly, Mr. Schmid violated the rules of professional conduct with regard to his representation of [J.C.]. Further, the Respondent stipulated that he violated KRPC 5.1(c)(2). As such, the Hearing Panel concludes that the Respondent had comparable managerial authority and he knew of Mr. Schmid's conduct at a time when its consequences could have been avoided or mitigated, but that he failed to take reasonable remedial action and, thus, violated KRPC 5.1(c)(2).

"8. KRPC 5.5(b) prohibits attorneys from 'assist[ing] a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.' The Respondent knew Mr. Schmid did not have a license to practice law in the State of Kansas. Additionally, the Respondent knew that Mr. Schmid was meeting with, advising and otherwise representing [J.C.] in a Kansas case. Therefore, the Hearing Panel concludes that the Respondent violated KRPC 5.5(b).

"9. 'It is professional misconduct for a lawyer to . . . [v]iolate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another.' KRPC 8.4(a). The Respondent knowingly assisted Mr. Schmid in the violations of the Kansas Rules of Professional Conduct when he allowed Mr. Schmid to meet with, advise, and otherwise represent [J.C.] in a Kansas case. As a result, the Hearing Panel concludes that the Respondent violated KRPC 8.4(a).

"10. [Supreme Court Rule] 116(a) provides as follows:

'Any attorney not admitted to the practice of law in Kansas but who is regularly engaged in the practice of law in another state, territory of the United States, or the District of Columbia, and who is in good standing pursuant to the rules of the highest appellate court in that jurisdiction, may on motion be admitted to practice law in the courts or any administrative tribunal of this state for the purpose of a particular case only upon showing that he or she has associated an attorney of record in the case who is regularly engaged in the practice of law in Kansas and who is in good standing under all of the applicable rules of the Kansas Supreme Court. The Kansas attorney of record shall be actively engaged in the conduct of the case; shall sign all pleadings, documents, and briefs; and shall be present throughout all court or administrative appearances. Service may be had upon the associated Kansas attorney in all matters connected with the case with the

same effect as if personally made on the outofstate attorney within this state.'

The Respondent violated [Supreme Court Rule] 116(a) when he failed to have Mr. Schmid admitted *pro hac vice* in [J.C.]'s case. The Respondent entered his appearance and the Court would have no way of knowing that the Respondent was not actively engaged in the conduct of the case. Accordingly, the Hearing Panel concludes that the Respondent violated [Supreme Court Rule]116(a).

"AMERICAN BAR ASSOCIATION
"STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to provide competent and diligent representation and adequate communication. Additionally, the Respondent violated his duty to the legal profession to comply with the rules of the Kansas Supreme Court.

"*Mental State.* The Respondent negligently violated his duties.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to his client and to the legal profession.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Prior Disciplinary Offenses.* Previously, the Respondent entered the Attorney Diversion Program. The diversion agreement required the Respondent to create a diary system to track cases. While the Respondent successfully completed the terms and conditions of diversion, he failed to adequately adopt such a diary system. Had he done so, the misconduct in this case might have been avoided.

"*A Pattern of Misconduct.* The Respondent engaged in a pattern of misconduct that spanned a six year time period. According to the Respondent's testimony approximately 10 other cases were similarly situated. The Respondent's pattern of misconduct included neglecting to track cases where he was attorney of record and failing to ensure that Mr. Schmid was admitted *pro hac vice* in Kansas cases where appropriate. Had the Respondent been regularly conducting a modest check of the open cases, he could have easily detected Mr. Schmid's misconduct.

"*Vulnerability of Victim.* [J.C.] was vulnerable to the Respondent's misconduct.

"*Substantial Experience in the Practice of Law.* The Missouri Supreme Court admitted the Respondent to the practice of law in 1990. Four years later, the Kansas Supreme Court admitted the Respondent. Accordingly, the Hearing Panel concludes that the Respondent has substantial experience in the practice of law.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*Absence of a Dishonest or Selfish Motive.* The Respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"*Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct.* The Respondent has attempted to right Mr. Schmid's wrongs and otherwise rectify the misconduct.

"*The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The Respondent cooperated during the hearing and fully and freely acknowledged his transgressions and those of Mr. Schmid.

"*Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The Respondent presented the testimony of two character witnesses. Additionally, the Respondent provided letters in support of the Respondent's character. As such, the Hearing Panel concludes that the Respondent enjoys a good reputation among his peers.

"*Imposition of Other Penalties or Sanctions.* The Respondent has had other penalties or sanctions imposed upon him by the lawsuit that was filed against him. However, the Respondent did not suffer a personal financial loss as a result of the suit.

"*Remorse.* At the hearing on this matter, the Respondent expressed remorse for having violated the Kansas Rules of Professional Conduct.

"In addition to the abovecited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.43 Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

'8.3(b) Reprimand is generally appropriate when a lawyer: . . .has received an admonition for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

## "RECOMMENDATION

"The Disciplinary Administrator recommended that the Respondent be suspended for a period of six months. Counsel for the Respondent recommended that the Respondent be censured by the Kansas Supreme Court and that the censure be published in the Kansas Reports.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be censured by the Kansas Supreme Court. The Hearing Panel further recommends that the censure be published in the Kansas Reports.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the disciplinary panel's findings, and the parties' arguments to determine whether KRPC violations exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009); see Supreme Court Rule 211(f) (2010 Kan. Ct. R. Annot. 327). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " 288 Kan. at 505 (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

In this case, respondent filed no exceptions to the panel's final hearing report. Accordingly, the report's findings and conclusions are deemed admitted. Supreme Court Rule 212(c) (2010 Kan. Ct. R. Annot. 344). And for the most part, our own review of the record satisfies us that the panel's findings of fact are supported by clear and convincing evidence and justify its conclusions of laws. But we take exception to the panel's determination that respondent's violations resulted entirely from negligence. We find the record supports a different conclusion that respondent knowingly disregarded his professional responsibilities, especially as it concerns Schmid's unauthorized practice of law in Kansas.

We base this conclusion on the panel's findings that respondent: (1) knew Schmid was meeting with, advising, and representing J.C. in her Kansas lawsuit when Schmid was not authorized to practice law in Kansas and not admitted *pro hac vice* by the district court; (2) knowingly assisted Schmid in the unauthorized practice of law by signing notices to take depositions that only Schmid planned to attend; and (3) knew about a prior problem relating to Schmid's representation of clients in a Kansas-based case. As to this latter point, the record reflects respondent entered into a diversion agreement with the Disciplinary Administrator regarding Schmid's handling of a Kansas workers compensation case and was aware there was a civil lawsuit against respondent's law firm concerning

the same incident. This knowledge coincided with respondent's representation of J.C. We further note the panel found there were approximately 10 other cases involving circumstances similar to those in J.C.'s case, which led the panel to conclude that respondent engaged in a pattern of misconduct spanning a 6-year time period. We agree with that conclusion.

From these circumstances, we find respondent was more than negligent. He had actual knowledge of at least some of the ethical violations to which he has admitted. In some other incidents, respondent remained purposefully oblivious to the pitfalls attendant to a law practice straddling different states when the firm's attorneys were not authorized to practice law in one of those states. Therefore, we reject the panel's broad determination that respondent acted negligently in all instances of cited misconduct. We further find, as did the panel, that Schmid's failure to comply with Supreme Court Rule 116 (2010 Kan. Ct. R. Annot. 202) led to many of the enumerated violations of the Rules of Professional Conduct. This finding underscores the rule's importance and merits some additional comments.

Supreme Court Rule 116(a) provides for admission *pro hac vice* in a specific case filed in Kansas only if: (1) out-of-state attorneys are in good standing with the respective jurisdictions in which they practice; and (2) the out-of-state attorney associates with an attorney of record who regularly practices law in Kansas. The rule requires the Kansas attorney be "actively engaged" in the conduct of the case; sign all pleadings, documents, and briefs; and be present throughout all court or administrative appearances. The admission of an out-of-state attorney to appear *pro hac vice* is a privilege authorized and regulated by this rule and always subject to judicial discretion. *Skahan v. Powell*, 8 Kan. App. 2d 204, 208, 653 P.2d 1192 (1982).

The rule serves as the procedural vehicle through which out-of-state attorneys are permitted on a temporary basis to involve themselves directly in litigation filed in Kansas courts. But the rule's purpose is to protect the public by ensuring familiarity with state law and local practices. *Thornburg v. McClelland*, 186 Kan. 20, 22, 348 P.2d 617 (1960) ("[l]awyers not regularly practicing in the state

are not usually familiar with the law and procedure thereof and . . . the public is entitled to have adequate counsel"). Without admission *pro hac vice*, out-of-state attorneys appearing in Kansas courts, or actively participating in pretrial proceedings such as depositions or mediations, would be engaged in the unauthorized practice of law in this state. See *In re Anonymous*, 932 N.E. 2d 1247, 1249 (Ind. 2010) ("Indiana co-counsel is subject to discipline if the out-of-state attorney fails to satisfy the requirements of the rule governing temporary admission.").

We have found the unauthorized practice of law to be contrary to the public interest and within the court's obligation to protect the public by maintaining appropriate standards for representation of litigants in Kansas courts. *State ex rel. Stephan v. Williams*, 246 Kan. 681, Syl. ¶ 4, 793 P.2d 234 (1990) ("The Kansas Supreme Court has the inherent power to prescribe conditions for admission to the bar and to define, supervise, regulate, and control the practice of law in Kansas."); *State ex rel. Stephan v. O'Keefe*, 235 Kan 1022, 1036, 686 P.2d 171 (1984) ("In the interpretation of the laws and administration of justice it is essential that there be members of the bar with ability, adequate learning and sound moral character. One of the important functions of this court is to admit only such persons to the practice of law in the courts of this state."); *State ex rel. Boynton v. Perkins*, 138 Kan. 899, Syl. ¶ 3, 28 P.2d 765 (1934) ("One of the important functions of this court is to . . . prevent the practice of law by unauthorized persons."). See also *In re Hughes*, 833 N.E.2d 459, 460 (Ind. 2005) (violation of professional conduct rule against unauthorized practice of law for Indiana lawyer to permit Michigan attorney to handle depositions and mediation in Indiana case); *Birbrower, Montalbano, Condon & Frank v. Superior Court*, 17 Cal. 4th 119, 129, 70 Cal. Rptr. 304, 949 P.2d 1( 1998) ("Authority to engage in the practice of law conferred in any jurisdiction is not *per se* a grant of the right to practice elsewhere, and it is improper for a lawyer to engage in practice where he is not permitted by law or by court order to do so.").

Applications to appear *pro hac vice* must be filed as soon as reasonably possible with the court or administrative tribunal where the case is pending. Supreme Court Rule 116(b). And to ensure

compliance with the rule, admission *pro hac vice* is necessary before out-of-state counsel's active involvement with any pretrial proceedings associated with the Kansas litigation. Here, respondent testified it was his practice not to seek Schmid's admission *pro hac vice* until there was an actual court appearance in a case. This, respondent conceded, resulted in Schmid participating in depositions, other pretrial matters with opposing counsel, and even mediation, without ever complying with Supreme Court Rule 116. Schmid eventually was able to begin withholding information from respondent and manipulating the client precisely because respondent was not "actively engaged" in what was happening in J.C.'s litigation and had a practice of not seeking Schmid's temporary admission *pro hac vice* as soon as reasonably possible as required by the rule. Respondent's conduct ignored his responsibility not to assist in the unauthorized practice of law and treated his ethical duty to invoke the temporary *pro hac vice* admission process for out-of-state attorneys as something minor and perfunctory.

That said, we emphasize our rule does not require local counsel to actively present the case in person each time there is a proceeding. *Oswald v. State*, 214 Kan. 162, 166, 519 P.2d 624 (1974). But it does require local counsel's substantive attention by being actively engaged in the conduct of the case, signing all court filings, and being present at all court or administrative appearances. What constitutes "court or administrative appearances" is universally understood to include appearances before the court or tribunal, but it does not necessarily extend to attendance at discovery depositions or mediations unless so ordered by the court or required by local rule. See, *e.g.,* 4th Judicial District Court local rule 4.203 (2009) ("Local counsel shall be required to appear at the taking of depositions, unless excused by prior order of the Court, where it appears that counsel's presence will not be necessary."); 18th Judicial District local rule 206 (2008) ("Local counsel shall be required to appear at the taking of depositions, unless excused by prior order of the Court, where it appears that counsel's presence will not be necessary.").

District courts, of course, may require local counsel's attendance—or excuse it—at any pretrial proceeding except court and

administrative appearances as specified by Rule 116. Courts and tribunals handling a particular matter are best equipped to decide if local counsel's attendance at depositions or mediations is necessary. And local counsel should be clear on the expectations of the trial court or tribunal while serving in a local counsel capacity. But just because local counsel may not be required to attend a deposition or mediation does not mean an out-of-state attorney may take or defend a deposition, or participate in mediation, without first having been authorized by the district court through Supreme Court Rule 116 to be admitted to practice law in this state for that particular case. The purposes behind the rule would be meaningless without this first step of applying for admission *pro hac vice* and having out-of-state counsel formally enter an appearance early in the proceedings. As noted above, respondent's failure to ensure compliance with Supreme Court Rule 116 led to many of the enumerated violations against him.

With respect to the discipline to be imposed, the panel's recommendation is advisory only and does not prevent the court from imposing different discipline. *In re Cline*, 289 Kan. 834, 846, 217 P.3d 455 (2009); Supreme Court Rule 212(f) (2010 Kan. Ct. R. Annot. 344). In this case, the panel recommended public censure and the Disciplinary Administrator's office argued for a 6-month suspension.

We find the panel's recommendation inadequate given the severity of these offenses. A majority of the court finds a 1-year suspension from the practice of law is the more appropriate penalty but believes respondent should have an opportunity to be reinstated after the first 6 months of suspension as provided below. A minority of the court would impose a longer suspension.

At oral argument, respondent admitted his violations of the Supreme Court Rules for attorney discipline and focused our attention on his considerable efforts to rectify the harm caused to his clients and others. He also outlined ways he has modified his case management practices to avoid future problems. He further noted he has formed a new firm, without Schmid, and practices with another attorney who participates in handling his cases. Respondent asked the court to take these endeavors into consideration,

which we have. But we find they are not sufficient to mitigate the seriousness of respondent's admitted KRPC violations. This misconduct caused direct harm to J.C., as well as to other clients shown by the record to have been victimized. In addition, and as found above, some of the misconduct was committed knowingly.

"Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding." Standard 6.22, American Bar Association Standards for Imposing Lawyer Sanctions.

"Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system." Standard 7.2.

### CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that James M. Roswold be suspended for 1 year from the practice of law in the state of Kansas, effective the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2010 Kan. Ct. R. Annot. 276).

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 218 (2010 Kan. Ct. R. Annot. 370).

IT IS FURTHER ORDERED that respondent may seek early reinstatement by motion to this court. Prior to filing this motion, respondent must have the Disciplinary Administrator's written approval. This approval may be sought by submitting any evidence the Disciplinary Administrator requires to demonstrate that: (1) effective case management procedures will be adopted for a law practice in which more than one attorney may work on a particular matter, including attorneys who are not licensed in the state where the litigation is filed; (2) respondent understands and agrees that all contingent fee agreements applicable to a case in which he or his firm is involved are in writing and conform to KRPC 1.5(d) (2010 Kan. Ct. R. Annot. 458); (3) reasonable protections are in place to manage trust accounts applicable to respondent's practice; and (4) respondent fully understands his obligation as local counsel in any matter in which he may serve in that capacity. If the Disciplinary Administrator is satisfied respondent has met these conditions, plus any other conditions the Disciplinary Administrator

determines appropriate, the Disciplinary Administrator's written approval will be filed as an exhibit to respondent's motion. Respondent may file a motion for early reinstatement any time after the first 6 months of his suspension.

IT IS FURTHER ORDERED that if respondent does not move for early reinstatement as provided above, or is denied early reinstatement, and then seeks reinstatement after the 1-year suspension period, respondent shall comply with Supreme Court Rule 219 (2010 Kan. Ct. R. Annot. 370).

IT IS FURTHER ORDERED that the costs of these proceedings are assessed to respondent and this opinion shall be published in the official Kansas Reports.